W. E. APPLEGREN and Marvin Apple-
gren, doing business as Applegren Con-
struction, Inc., Plaintiffs and Appellees,

v.

MILBANK MUTUAL INSURANCE
COMPANY, Defendant and
Appellant.

Civ. No. 9439.

Supreme Court of North Dakota.

June 28, 1978.

Mack, Moosbrugger, Leonard & Ohlsen,
Grand Forks, for plaintiffs and appellees;
argued by Shirley A. Dvorak, Grand Forks.

Letnes, Marshall & Hunter, Grand Forks,
for defendant and appellant; argued by F.
John Marshall, Grand Forks.

SAND, Justice.

Milbank Mutual Insurance Company, of
Milbank, South Dakota [hereinafter Mil-
bank], appealed from a Grand Forks County

district court judgment which held that Milbank breached a duty to defend Applegren Construction, Inc. [hereinafter Applegren, Inc.], in a prior action against them by Crookston Electric Motor and Marine.

Milbank also appealed from an order denying its motion to amend findings of fact, conclusions of law, and order for judgment.

Applegren, Inc., a subcontractor,[1] had a contract to build a utility building "in good workmanlike manner" for Crookston Electric Motor and Marine.

The building, while still under construction, collapsed following a severe windstorm. Donald Peterson, doing business as Crookston Electric Motor and Marine, brought an action against Applegren, Inc., and others, in the Ninth Judicial District of Minnesota, alleging that the building was erected negligently. (The pertinent parts of the amended complaint are set out later herein.) [2]

Milbank, after having been duly informed of the summons and complaint served upon Applegren, Inc., refused to honor the request to defend on the ground that the Applegren, Inc., insurance policy did not cover the subject of the lawsuit.

Applegren, Inc., then retained counsel at its own expense and, following a trial in Polk County, Minnesota, district court, settled its part of the case for $3,250.00.

Thereafter Applegren, Inc., brought a declaratory judgment action against Milbank seeking adjudication of the rights and liabilities of the parties regarding the insurance policy and an order directing Milbank to indemnify Applegren, Inc., for any and all losses and attorney fees incurred in defense of its lawsuit. After a trial, the Grand Forks district court issued a judgment in favor of Applegren, Inc., for attorney fees and costs plus reasonable losses paid by them in settling the previous lawsuit in Minnesota. Milbank appealed from this judgment.

The principal issue before us is whether or not the insurance policy issued to Applegren Construction Company by Milbank Mutual Insurance Company covered negligent workmanship of the insured so that Milbank should have defended Applegren, Inc., in the prior action by Crookston Electric Motor and Marine against Applegren, Inc., and others.

A brief reference to Milbank's appeal of the order denying the Rule 52(b) (North Dakota Rules of Civil Procedure) motion for amended findings of fact is appropriate before we consider the main issues.

■ A motion under Rule 52(b), NDRCivP, is not appealable under federal practice. North Dakota adopted its Rule 52(b) from the Federal Rule. In addition, in North Dakota the Legislature, pursuant to Section 90 of the North Dakota Constitution, as amended, determines what is appealable. A Rule 52(b) motion is not included in § 28–27–02, North Dakota Century Code, which sets out what is appealable, and therefore it is not appealable. In *Ellendale Farmers Union Cooperative Association v. Davis,* 219 N.W.2d 829 (N.D.1974), we said an order granting a motion to amend findings of fact was not appealable. However, a nonappealable order is reviewable on appeal from a judgment *[Danks v. Holland,* 246 N.W.2d 86 (N.D.1976)], if the order and facts essential to review are embodied in the record on appeal [*Wahpeton Public School District No. 37 v. North Dakota Education Association,* 166 N.W.2d 389 (N.D.1969)], and may be reviewed as an incident to or as a part of the final action of the Supreme Court [*Schaff v. Kennelly,* 69 N.W.2d 777 (N.D.1955)].

The record on appeal contained all of the evidence and facts considered by the trial court. The proposed findings of fact consisted primarily of interpretations and con-

---

1. The original contract for construction of the building was between Crookston Electric Motor and Marine, and Lester's of Minnesota, Inc., a building materials supplier, and Wagner Building and Sales, a business represented of Lester's of Minnesota, Inc.

2. The original complaint also alleged negligence and unworkmanlike performance in the construction of the building.

structions of the policy and would have been more properly labeled as conclusions of law.

The issues raised by the Milbank Rule 52(b), NDRCivP, motion are similar to and, for all practical purposes, will be resolved with the resolution of the basic issues raised in the appeal from the judgment. Therefore it will not be necessary to consider and treat the denial of the Rule 52(b), NDRCivP, motion separately.

We now examine certain provisions of the insurance policy which need to be considered in connection with the allegations in the complaint of the previous lawsuit (the one in the ninth district in Minnesota). The provisions which need to be considered are found under the heading of "Exclusions."

"This insurance does not apply:

"(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;

.    .    .    .    .

"(k) to property damage to
(1) property owned or occupied by or rented to the insured,
(2) property used by the insured, or
(3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control;
but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to property damage (other than to elevators) arising out of the use of an elevator at premises used by, rented to or controlled by the named insured."

[Underscoring ours.]

The policy also contained the following provision which needs to be considered:

"COVERAGE B—PROPERTY DAMAGE LIABILITY

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A.   bodily injury or
B.   property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."

With reference to the insurer's obligation to defend, the North Dakota Supreme Court, in *Kyllo v. Northland Chemical Co.*, 209 N.W.2d 629, 634 (N.D.1973), quoted with approval from *Eichler Homes, Inc. v. Underwriters at Lloyd's, London,* 238 Cal. App.2d 532, 538, 47 Cal.Rptr. 843, 847 (1965), as follows:

"The insurer's obligation to defend must be measured by the terms of the insurance policy and the pleading of the claimant who sues the insured.   .   .   .   If the allegations of the claimant's complaint would support a recovery upon a risk covered by the insurer's policy, then the duty to defend is present."

The Court observed that the same rule, with possible different phraseology, is followed in the following cases: *Lee v. Aetna Casualty & Surety Co.,* 178 F.2d 750, 751 (2 Cir. 1949); *Republic Vanguard Insurance Co. v. Buehl,* 295 Minn. 327, 204 N.W.2d 426 (1973); *Pow-Well Plumbing & Heat. v. Merchants Mut. Cas. Co.,* 195 Misc. 251, 89 N.Y.S.2d 469 (1949); and *Wilson v. Maryland Cas. Co.,* 377 Pa. 588, 105 A.2d 304 (1954).

The Court further observed that:

"Generally, where there is doubt as to whether the duty to defend exists, such doubt is resolved in favor of the insured." *Kyllo, supra,* at 634.

In the instant case we have basically only the pleadings upon which the issue can be resolved.

With these principles of law in mind, we now examine the allegations of the complaint material to the issues.

The amended complaint of Crookston Electric Motor and Marine, in a prior lawsuit in the Ninth Judicial District of Minnesota against Applegren, Inc. (and others), contained the following pertinent allegations:

"XIII.

"That by virtue of said contract between defendants Wagner and Defendants Applegren, Defendants Applegren agreed to erect said building in a good workmanlike manner.

"XIV.

"That said building was not erected in a good workmanlike manner.

"XV.

"That Defendants Applegren failed to erect said building in a good workmanlike manner constituting a breach of said contract.

"XVI.

"Defendants Applegren were negligent in the erection of said building.

"XIX.

"That on or about April 18, 1973 said building collapsed as a direct and proximate result of the negligence, breach of contract, and breach of warranty of each of the Defendants, all to Plaintiff's damage in the sum of Twenty-Six Thousand Five Hundred Dollars ($26,500.00)."

The amended complaint was attached and submitted to the trial court by the Applegrens in a memorandum of law in support of declaratory judgment.

We note that the trial court did not predicate its decision that Milbank had a duty to appear and defend the Applegrens on a finding that the "care, custody or control" in paragraph (k) of the exclusion did or did not apply. The trial court, in its amended judgment and decree, stated:

"4. That certain small print exclusions contained in the aforementioned policy of insurance are ambiguous and contradictory when considered together with prior and more conspicuous provisions of the policy.

"5. That said policy of insurance covered the issue of the workmanship of the insured.

"6. That the defendant attempted to avoid the defense of the plaintiff herein on the exclusion contained under paragraph K3 of 'Exclusions' which related to property in the 'care, custody and control' of the insured.

"7. That due to the involvement of Lester's of Minnesota and of Wagner's Building and Sales in the construction of the Crookston Motor and Marine Building, there was and is a serious question as to whether or not the defendant could assert its denial of the defense of the Minnesota lawsuit as herein outlined based upon the exclusion outlined in Paragraph VII of the Findings of Fact.

"8. That there is a sound basis for the defendant, Milbank Mutual Insurance Company, to defend the plaintiffs herein in the Minnesota lawsuit, more particularly named in Paragraph VIII of the Findings of Fact." [3]

The complaint generally alleged negligence on the part of Applegren, Inc., in the construction of the building. More specifically, it alleged that the building was not erected in a good workmanlike manner and constituted a breach of contract.

**3.** Finding of Fact VIII: "That the plaintiffs in the instant case together with others subsequently became defendants in an action entitled *Federated Insurance Company vs. Marvin Applegren and W. E. Applegren, d/b/a Applegren Construction Company; Wayne Wagner* and *Alvin Wagner, d/b/a Wagner Building and Sales; Lester's of Minnesota, Inc., a corporation,* and that said action was then venued in the Ninth Judicial District, Polk County, Minnesota.

■ In examining and construing the policy, we find that paragraph (a) contains an exclusion to an exclusion, or, to state it another way, an exception to an exception. The controlling language is: "but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner." This clearly means that the policy covered and applied to the insured's warranties that the work would be performed in a workmanlike manner. We can reach no other conclusion.

"Workmanlike" is defined in Webster's Third International Dictionary Unabridged as follows: "worthy of good workman; well performed: skillful."

In *Newson Construction Co. v. Calvary Assembly of God Church,* 193 Neb. 556, 227 N.W.2d 886, 888 (1975), the court said:

"This clause [in a good workmanlike manner] provides almost exactly the same obligation as to workmanship which this court has held to be implied in construction contracts generally, in the absence of express statements to the contrary."

It then referred to *Henggeler v. Jindra,* 191 Neb. 317, 214 N.W.2d 925 (1974), which held:

"As a general rule a contractor constructing a building impliedly warrants that the building will be erected in a workmanlike manner and in accordance with good usage and accepted practices in the community in which the work is done."

In a similar manner, the court in *Markman v. Hoefer,* 252 Iowa 118, 106 N.W.2d 59 (1960), said:

" . . . In building and construction contracts, in the absence of an express agreement to the contrary, it is implied that the building will be erected in a reasonably good and workmanlike manner and will be reasonably fit for the intended purpose."

■ From the foregoing authorities, it becomes eminently clear that any work by a contractor constructing a building not performed in a workmanlike manner constitutes negligence and a breach of warranty.

■ However, Milbank argued and contended that pursuant to the exclusion clause in paragraph (1), quoted earlier herein, it was under no obligation to defend because at the time the building under construction collapsed, the building materials and the building itself were under the care and physical custody of Applegren, Inc., and that the policy did not apply to property in the care, custody or control of the insured. But, the language "property in care, custody or control of the insured as to which the insured is for any purpose exercising physical control" is not free from doubt as to whether it means sole care, etc., or absolute care, or if it includes or excludes property under joint control and care. The trial court found as a fact that the control of the materials was also in others and not only in Applegren, Inc. In this respect we agree with the trial court that the language is ambiguous, particularly if construed in conjunction with paragraph (a).

■ The complaint does not provide any information which would permit a conclusion that the building was under the physical control of Applegren, Inc., at the time it collapsed. Milbank basically contended and argued that a strong wind caused the building to collapse. Again, the information contained in the amended complaint does not permit such a conclusion. Even if the building in fact was destroyed by wind, such information would have had to have been introduced by some other means. But, in accordance with *Kyllo, supra,* it is the information in the complaint which is controlling. Information outside the complaint, in the absence of other proceedings, would not be available to the insurer for the purposes of determining whether or not there is an obligation to defend the principal action. Any ambiguity or reasonable doubt as to the meaning of a policy is to be construed strictly against the insurer and in favor of the insured. *Mills v. Agrichemical Aviation, Inc.,* 250 N.W.2d 663 (N.D.1977); *Nodak Mutual Insurance Company v. Loeffler,* 225 N.W.2d 290 (N.D. 1974). The issue, however, is not whether

Milbank will be ultimately liable for property damage to the building, but whether or not, on the basis of the complaint and under the provisions of the policy, it had a duty to defend. *Kyllo, supra.* We do not rest our decision primarily on the principles of law pertaining to ambiguities in insurance policies.

We conclude that under paragraph (a) of the policy set out earlier herein, Milbank was obligated to defend. The amended complaint clearly stated allegations which come within the terms of paragraph (a) of the insurance policy. We reach this conclusion without taking into consideration any of the provisions of paragraph (k), which we believe are ambiguous.

Because Milbank breached its duty to defend, it is liable for the cost of defense and also the amount for which the insured settled the claim. See Annot. 67 A.L.R.2d 1086–1089.

The judgment of the trial court is affirmed.

ERICKSTAD, C. J., and VOGEL, PEDERSON and PAULSON, JJ., concur.