**STILLWATER CONDOMINIUM ASSOCIATION, Plaintiff,**

v.

**AMERICAN HOME ASSURANCE COMPANY, a New York corporation; and Fireman's Fund Insurance Company, a California Corporation, Defendants.**

No. CV–79–50–Bu.

United States District Court,
D. Montana,
Butte Division.

March 6, 1981.

Page Wellcome, Bozeman, Mont., for plaintiff.

James E. Purcell of Henningsen, Purcell & Genzberger, Butte, Mont., for Firemen's Fund Insurance Co.

Ben E. Berg, Jr. of Berg, Coil, Stokes & Tollefsen, Bozeman, Mont., for American Home Assurance.

## MEMORANDUM and ORDER

WILLIAM D. MURRAY, Senior District Judge.

This diversity action is for declaratory judgment to determine the rights of the parties under a comprehensive general liability (CGL) insurance policy and an umbrella liability policy. Land developer Big Sky of Montana, Inc. (Big Sky), purchased the CGL policy from American Home Assurance Company (American Home) and the umbrella liability policy from Fireman's Fund Insurance Company. The damages

which plaintiff contends are covered by the liability policies arise out of a civil action in a Montana district court (the *Stillwater* action).

The facts of the *Stillwater* action are as follows. Big Sky built and marketed the Stillwater condominiums in the highly scenic Big Sky Resort area. The purchasers of the condominiums, as the Stillwater Condominium Association, brought suit against Big Sky to recover damages for faulty workmanship because the condominiums were poorly constructed. Just a few of the indicia of that poor construction were leaking roofs, delaminating siding, and improperly installed wiring and plumbing.

Big Sky tendered defense of the *Stillwater* action to American Home. American Home refused to defend, contending that a CGL policy does not provide coverage for the allegations of the *Stillwater* action. That action ultimately settled, and the Stillwater Condominium Association acquired through that settlement "[a]ll rights, title, and interest in any and all insurance policies procured by Big Sky of Montana, Inc., which would or could provide insurance coverage for the damages alleged. . . ." This court must determine whether the liability policies here at issue provide coverage for the occurrences of the *Stillwater* action, and more particularly, whether American Home had a duty to defend.

In the *Stillwater* action the Stillwater Condominium Association alleged breach of express warranty, breach of implied warranty, breach of contract, strict liability in tort, and negligence. Under Montana law an insurer has a duty to defend if the complaint alleges facts, which if proven, would result in coverage. *Atcheson v. Safeco Ins. Co.*, 165 Mont. 239, 527 P.2d 549, 552 (1974). The facts alleged in the *Stillwater* action constitute faulty workmanship. The damages sought there are for repair or replacement of that faulty workmanship, i. e. repair of the condominiums themselves. Whether those damages are covered by the CGL policy controls whether American Home had a duty to defend in the *Stillwater* action.

Whether a CGL policy covers an insured's failure to perform in a workmanlike manner, where as here the faulty work product constitutes the basis for damages, has split those jurisdictions which have resolved the issue. The majority find no coverage and no duty to defend under facts analogous to those in the instant case.[1] This court joins that majority in so holding based upon the following discussion.

The pertinent policy language in the American Home policy is:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

*to which this insurance applies,* caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations in the suit are groundless, false or

1. The four jurisdictions which have found coverage or a duty to defend are Arizona, Michigan, New Hampshire, and North Dakota. *See Commercial Union Assur. Companies v. Gollan,* 394 A.2d 839 (N.H.1978); *Applegren v. Milbank Mut. Ins. Co.,* 268 N.W.2d 114 (N.D.1978); *Federal Insurance Company v. P.A.T. Homes, Inc.,* 113 Ariz. 136, 547 P.2d 1050 (1976); *Fresard v. Michigan Millers Mut. Ins. Co.,* 97 Mich. App. 584, 296 N.W.2d 112 (Ct.App.1980), *appeal docketed,* No. 46110 (Mich.S.Ct. May 29, 1980).

The eight jurisdictions which have found no coverage and no duty to defend are Alaska, California, Florida, Indiana, Missouri, New Jersey, South Dakota and Tennessee. *See Biebel Bros., Inc. v. United States Fidelity & G. Co.,* 522 F.2d 1207 (8th Cir. 1975) (construing Missouri law); *Indiana Ins. Co. v. DeZutti,* 408 N.E.2d 1275 (Ind.1980); *Shelby Mutual Insurance Company v. LaMarche,* 371 So.2d 198 (Fla.Ct.App.1979), *aff'd.,* 388 So.2d 1118 (1980); *Vernon Williams & Son v. Continental Ins. Co.,* 591 S.W.2d 760 (Tenn.1979); *U. S. Fire Ins. Co. v. Colver,* 600 P.2d 1 (Alaska 1979); *Weedo v. Stone-E-Brick, Inc.,* 81 N.J. 233, 405 A.2d 788 (1979); *St. Paul Fire & Marine Ins. Co. v. Coss,* 80 Cal.App.3d 888, 145 Cal.Rptr. 836 (Cal.Ct. App.1978); *Haugan v. Home Indemnity Company,* 86 S.D. 406, 197 N.W.2d 18 (1972).

fraudulent, and may make such investigation and settlement of any claim or suit it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgment or settlements. (emphasis added).

EXCLUSIONS

*This insurance does not apply*:

(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but *this exclusion* does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner; (emphasis added) . . .

(*l*) to property damage to the named insured's products arising out of such products or any part of such products;

(m) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; . . . .

Plaintiff urges that the exception to exclusion (a), "but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;" should be construed to grant coverage for the occurrences alleged in the *Stillwater* action. In the alternative plaintiff argues that the exception to exclusion (a), when read in conjunction with exclusions (1) and (m), creates an ambiguity in the contract which must be construed in favor of coverage.

I. Whether the exception to exclusion (a) grants coverage for repair of faulty work products.

Plaintiff relies upon *Applegren v. Milbank Mutual Ins. Co.*, 268 N.W.2d 114

(N.D.1978), in arguing that the exception to exclusion (a) grants coverage for the occurrences of the *Stillwater* action. Focusing on exclusion (a), and emphasizing the language, "*this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner*," *Id.* at 116, the *Applegren* court simply held that the exception to exclusion (a) "clearly means that the policy covered and applied to the insured's warranties that the work would be performed in a workmanlike manner." *Id.* at 118. *Applegren*, however, stands alone in finding coverage based only on the language in the exception to exclusion (a).[2]

Further, plaintiff's argument is unpersuasive because it overlooks the "all-risk" nature of the CGL policy. All-risk means that all insurable, fortuitous events resulting in legal liability to the insured are covered, save those occurrences specifically excluded in the policy. The occurrences of the *Stillwater* action, therefore, would be covered by the CGL policy if that policy contained no applicable exclusions. That policy does contain applicable exclusions however; at issue here are exclusions (a), (*l*) and (m). Exclusion (a) excludes from the broad all-risk coverage, "liability assumed by the insured under any contract or agreement except an incidental contract." The exclusion goes on, in the exception to exclusion (a), to bring back within the all-risk coverage, i. e. within the insuring provision, "a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner." Were there no other exclusions to operate on the broad coverage of the insuring provision, the allegations of the *Stillwater* action, if proven, would be covered and American Home would have had a duty to

**2.** "We conclude that under paragraph (a) of the policy set out earlier herein, Milbank was obligated to defend. The amended complaint clearly stated allegations which come within the terms of paragraph (a) of the insurance policy. *We reach this conclusion without taking into consideration any of the provisions of paragraph (k), which we believe are ambiguous.*" *Id.* at 119 (emphasis added).

defend. There are additional exclusions, however, which further limit the insuring provision, specifically exclusions (*l*) and (m). Plaintiff would have the court ignore exclusions (*l*) and (m) and hold that coverage is granted simply by the exception to exclusion (a). The court, however, cannot ignore exclusions (*l*) and (m) which uniformly have been held straightforward and unambiguous in eliminating coverage for repair or replacement of the insured's own faulty work. *E. g., Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 405 A.2d 788, 794 (1979) (citations omitted); *Haugan v. Home Indemnity Company*, 86 S.D. 406, 197 N.W.2d 18, 22 (1972) (citations omitted).

II. Whether exclusions (a), (*l*) and (m) create an ambiguity which must be resolved in favor of coverage.

The New Hampshire Supreme Court in *Commercial Union Assur. Co. v. Gollan*, 394 A.2d 839 (N.H.1978), found exclusion (a) and the business risk exclusions ambiguous, and imposed coverage for the insured's liability to rebuild the roof on a home built by the insured after it had collapsed. Basically, the *Gollan* court embraced the contention made here by plaintiff that exclusion (a) contradicts the business risk exclusions by granting coverage for warranty of fitness, thereby creating an ambiguity which must be resolved in favor of coverage. To reemphasize, however, the exclusion clauses do not grant coverage; exclusions limit the scope of coverage granted in the insuring agreement. *E. g., Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 405 A.2d 788 (1979). Each exclusion refers to the hazards insured against in the coverage paragraph, *St. Paul Fire & Marine Ins. Co. v. Coss*, 80 Cal. App.3d 888, 896, 145 Cal.Rptr. 836, 841 (Cal. Ct.App.1978), and not to the other exclusions; exclusions are to be read "with the insuring agreement, independently of every other exclusion." *Weedo*, 405 A.2d at 795 (citation omitted).

Further, the *Weedo* analysis is consistent with the all-risk nature of the CGL policy. To reiterate, the facts alleged in the *Stillwater* action are within the coverage of the insuring agreement standing alone. The exception to exclusion (a) preserves that coverage and brings it back within the broad all-risk coverage of the insuring agreement. Exclusions (*l*) and (m), the business risk or work product exclusions, however, remove the occurrences of the *Stillwater* action from the coverage granted by the insuring provision. The occurrences of the *Stillwater* action are not covered because the condominiums which are the basis of the damage are "the named insured's products" (exclusion (*l*)), and "work performed by or on behalf of the named insured" (exclusion (m)).

Additionally, the language "to which this insurance applies" provides notice that some occurrences resulting in damage simply are not covered. Thereafter, each exclusion further defines and limits the coverage provided. The faulty workmanship resulting in damages to the Stillwater condominiums, in the general sense may be property damage, but is not as stated in the CGL policy "property damage to which this insurance applies." Moreover, the language used in the exception to exclusion (a) that "this exclusion does not apply to . . ." provides further notice that other exclusions may and do indeed further limit the coverage granted in the insuring provision.

■ Plaintiff, however, urges the following analysis. The exception to exclusion (a) "grants" coverage for the occurrences of the *Stillwater* action. Exclusions (*l*) and (m) (the business risk exclusions) take away, or are in juxtaposition with, the coverage "granted" in the exception to exclusion (a). Therefore ambiguity arises and coverage results. *See, e. g. Commercial Union Assur. Companies v. Gollan*, 394 A.2d 839, 842 (N.H.1978). This analysis, however, is inapposite because the coverage supposedly "granted" by the exception to exclusion (a) has already been granted in the insuring provision. Having been granted in the insuring provision, that coverage is subject to the limitation of each and every exclusion.

In sum, this court finds no ambiguity in the CGL policy provisions here at issue.

It is one thing to construe an ambiguity, and it is quite another matter to create one. The terms of the insurance policy should be given a practical and reasonable construction which support (sic) the intent of the parties. The court should not attempt to revise the policy to increase the risk or extend liability just to accomplish a so-called good purpose. *Stearns-Roger Corp. v. Hartford Acc. & Indem. Co.*, 117 Ariz. 132, 571 P.2d 659, 662 (1977) (citations omitted).

The court will not glean the exclusions and apply exceptions where application is not meant or proper just to create an "ambiguity." To read out of the CGL policy the business risk exclusions which uniformly have been held as unambiguous is to give neither a reasonable nor a practical construction to the policy's terms.

III. Whether because jurisdictions disagree as to the ambiguity of exclusions (a), (*l*) and (m), those exclusions are ambiguous as a matter of law.

■ Plaintiff relies upon *Federal Insurance Company v. P.A.T. Homes, Inc.*, 547 P.2d 1050, 1052 (Ariz.1976), in arguing that "where various jurisdictions reach different conclusions as to the meaning, intent, and effect of the language of an insurance contract ambiguity is established." The essence of plaintiff's argument is that where courts disagree whether certain language is ambiguous, that language must therefore be ambiguous. Plaintiff's logic is not universally sound. That several jurisdictions disagree as to the meaning of the language *might* indicate genuine ambiguity. Regarding the instant issue, however, "ambiguity" results only from a forced construction of the policy language. There being no genuine ambiguity then, ambiguity as a matter of law is moot.

Additionally, this court wonders even in those cases where legitimate, differing interpretations of the same language result, at what point the language becomes ambiguous *as a matter of law*. Is that point reached when the jurisdictions are split evenly, when there is a 40%, 30% or 20%

minority; or can a court no longer consider the issue for itself when only one other court reaches an opposite conclusion? This court prefers the alternative which allows each court to decide the issue in light of the policy terms and the facts before it.

IV. Conclusion.

■ For all of these reasons this court will not indulge in a forced construction of the CGL policy just to impose coverage. This court reaches the same conclusion regarding the umbrella liability coverage issued by Fireman's Fund Insurance Company because that policy has the same exclusions as has the American Home CGL policy. Because there is no coverage under these policies, American Home had no duty to defend in the *Stillwater* action.

THEREFORE, IT IS ORDERED and this does order that defendants' motion for summary judgment is hereby granted.

IT IS FURTHER ORDERED that all other motions before the court are denied.