STATE BANK OF BURLEIGH COUNTY TRUST COMPANY, a North Dakota Banking Corporation, Plaintiff, Appellee and Cross-Appellant,

v.

CITY OF BISMARCK, a municipal corporation, acting By and Through the BISMARCK BOARD OF CITY COMMISSIONERS, Defendant, Appellant and Cross-Appellee.

Civ. No. 10091.

Supreme Court of North Dakota.

Feb. 17, 1982.

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for plaintiff, appellee and cross-appellant; argued by David L. Peterson, Bismarck.

John A. Zuger, City Atty., Zuger & Bucklin, Bismarck, for defendant, appellant and cross-appellee.

PEDERSON, Justice.

■ This is an appeal by the City of Bismarck from a judgment declaring part of an alley vacated and awarding costs of $1,439.50, and a cross-appeal by the State Bank of Burleigh County from that part of the judgment which failed to award attorney's fees.[1] We affirm the judgment.

Suit was brought by the Bank seeking declaratory relief. A court has discretion-

ary power to render a declaratory judgment when it will determine a justiciable controversy. Section 32–23–06, NDCC, and Rule 57, N.D.R.Civ.P. Both the Bank and the City moved for summary judgment, supported by affidavits and depositions. Rule 56, N.D.R.Civ.P. The documentary evidence is extensive, confusing, and does little to clarify the events that provoked this lawsuit. No issues have been raised as to the propriety of declaratory relief or summary judgment.

Although we periodically say that it is important to reach the merits of appeals whenever possible, e.g., Dossenko v. Dossenko, 294 N.W.2d 909 (N.D.1980), and Ingalls v. Bakken, 167 N.W.2d 516, 519 (N.D.1969), we must first address the Bank's two motions: (1) that the City be required to file an undertaking pursuant to § 28–27–09.1, NDCC, and (2) that the appeal be dismissed because it was taken without formal action by the board of city commissioners at an open meeting as allegedly required by Article XI, §§ 5 and 6, of the North Dakota Constitution, and § 44–04–19, NDCC.

## MOTION TO REQUIRE UNDERTAKING

■ Section 28–27–09.1, NDCC, was enacted in 1971. It provides:

"When the state, or any state officer, or state board, in a purely official capacity, or any public corporation, or any municipal corporation within the state, shall take an appeal, service of the notice of appeal shall perfect the appeal and stay the execution or performance of the judgment or order appealed from and no undertaking need be given, but the supreme court on motion may require sureties to be given in such form and manner as it shall prescribe as a condition of the further prosecution of the appeal." [Emphasis supplied.]

---

1. The cross-appeal also attempted to appeal from a "portion of the memorandum decision" and from a "portion of the order for judgment." Neither the memorandum decision nor the order for judgment are final orders and are thus not appealable. *Rummel v. Rummel*, 234 N.W.2d 848 (N.D.1975); *Chas. F. Ellis Agency, Inc. v. Berg*, 214 N.W.2d 507 (N.D.1974); 4

C.J.S. Appeal & Error § 153. Because there is a cross-appeal from a part of the judgment relating to attorney's fees only, the principle that any error made below and preserved by appropriate objection is reviewable does not apply to the Bank in this case. *See Applegren v. Milbank Mut. Ins. Co.*, 268 N.W.2d 114 (N.D. 1978).

Rule 62, N.D.R.Civ.P., was adopted by this court in 1957, and provided in part:

"(e) Stay in Favor of the State or Agency Thereof. When ... the judgment is stayed, no bond, obligation, or other security shall be required from the appellant."

Section 28–2719 of the North Dakota Revised Code of 1943 was superseded by Rule 62(e). The superseded statute previously provided that:

"When the state ... shall take an appeal, service of the notice of appeal shall perfect the appeal and stay the execution or performance of the judgment or order appealed from and no undertaking need be given, but the supreme court on motion may require sureties to be given in such form and manner as it shall prescribe as a condition of the further prosecution of the appeal."

Section 28–2709, NDRC, 1943, was not superseded by the Rules of Civil Procedure. In 1971 it provided:

"To render an appeal effectual for any purpose, an undertaking must be executed on the part of the appellant by at least two sureties to the effect that the appellant will pay all costs and damages which may be awarded against him on the appeal not exceeding two hundred fifty dollars."

Section 28–2711, NDRC, 1943, was, however, superseded by Rule 62(d). Section 28–2711, before it was superseded, provided:

"If the appeal is from a judgment directing the payment of money, it shall not stay the execution of the judgment unless an undertaking is executed on the part of the appellant by at least two sureties to the effect that if the judgment appealed from, or any part thereof, is affirmed the appellant will pay the amount directed to be paid by the judgment, or the part of such amount as to which the judgment shall be affirmed, if it is affirmed only in part, and all damages, which shall be awarded against the appellant on appeal."

Rule 62(d) provided:

"(d) Stay Upon Appeal. When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal. The stay is effective when the supersedeas bond is approved by the court."

From 1957 to 1971 there was, accordingly, no statute or rule automatically staying a judgment when the state or its agencies and subdivisions took an appeal.[2]

Presuming that § 28–27–09.1 is valid and applicable as the parties presumed, we decline to require the City to provide sureties in this case. In one of the earliest cases determined by this court applying territorial law, it was said:

"But it is the policy of this jurisdiction that no security need be given to obtain a stay of execution pending an appeal, where the appellant, as in this case, is a municipal corporation. The reason is obvious. No security on appeal could make the judgment any more secure." *Territory v. Woodbury*, 1 N.D. 85, 44 N.W. 1077, 1078 (1890).

The Bank has not explained to us how sureties would be beneficial to the Bank in collecting any damage claim that it might have against the City. We accordingly apply the exemption provided by § 28–27–09.1 as recognized in Rule 7, N.D.R.App.P., and Rule 62(e), N.D.R.Civ.P., and decline to require sureties.

---

**2.** *Some interesting questions that are apparent but which were not briefed and argued and which, therefore, must await another day, are:* (1) Is § 28–27–09.1 a statute "relating to pleadings, practice, and procedure," making it effective "as a rule of court," as provided in § 27–02–09? (2) Did the 1976 amendment to Article VI, § 3, of the North Dakota Constitution, giving this court exclusive jurisdiction over rules of procedure, invalidate the provisions of both §§ 27–02–09 and 28–27–09.1? (3) Does the exemption of the state from the requirements to provide undertakings on appeals and staying proceedings pending such appeals, involve substantive rights which are not subject to procedural rules?

## MOTION TO DISMISS APPEAL

The Bank's motion that we dismiss the City's appeal raises unique questions not heretofore considered by this court. It is argued by the Bank that the city commissioners must specifically authorize the city attorney to appeal, and that the authorizing action must be taken at an open meeting as required by Article XI, §§ 5 and 6, of the North Dakota Constitution, and § 44–04–19, NDCC.

The governing body of a city may regulate the operations, management and organization of all the departments and agencies created by it for administration of the city's affairs. Section 40–09–14, NDCC. The duties and powers of municipal officers, which are not defined in Title 40, NDCC, *shall* be defined by the governing body. Section 40–13–11, NDCC. Section 40–15–05(3), NDCC, provides for the appointment of a city attorney under the commission system. The duties of a city attorney are listed in § 40–20–01, NDCC, and include the duty to: "Conduct all law business in which the city or any of its departments shall be interested."

In the absence of a showing that the governing body intends otherwise, we see no reason to limit the authority of the city attorney to the conduct of law business at the trial level only. As a general rule, a city attorney has the same powers with regard to the city as a private attorney has with regard to a private client. *See generally*, 64 C.J.S. Municipal Corporations, § 2206; 56 Am.Jur.2d Municipal Corporations, Etc., § 282; Annotation—Doctrine of Apparent Authority as Applied to Agent of Municipality, 77 A.L.R.3d 925.

In *Rolfstad, Winkjer, Suess, McKennett & Kaiser v. Hanson*, 221 N.W.2d 734, 736 (N.D.1974), this court said:

"The authority of the lawyer to act for his client stems from the law of agency. [Citation omitted.] However, there are certain aspects of the attorney's authority that must be inherent and peculiar to the attorney-client relationship. Where a duly licensed attorney at law appears in an action or proceeding, it is presumed that he has authority to appear for the person for whom he assumes to act. [Citations omitted.] The business of the courts must proceed on this presumption. In addition, the client may ratify acts of the attorney not otherwise authorized, by acquiescence over an extended period, with full knowledge of the facts."

The Supreme Court of Arkansas has said that:

"... it is incumbent on the party undertaking to question the authority of the attorney representing his adversary, to show to the Court by affidavit, facts sufficient to raise a reasonable presumption that the attorney is acting in the case without authority from the party he assumes to represent, then, and not until then, the attorney may be required to show his authority." *Campbell v. City of Hot Springs*, 341 S.W.2d 225, 227 (Ark. 1960).

In dismissing an appeal because it had not been authorized by the governing body of the city, the South Dakota Supreme Court said:

"... the power to control litigation on behalf or in the interests of a municipal corporation ... rests solely with the ... [governing body]." *Shaw v. Common Council of City of Watertown*, 75 S.D. 241, 63 N.W.2d 252, 255 (1954).

Later, in *City of Redfield v. Wharton*, 79 S.D. 557, 115 N.W.2d 329 (1962), the same court reversed a dismissal even though prosecution by the city attorney had not been "directed by the governing body," explaining that action by the governing body is unnecessary when the activity involved is a duty imposed on the city attorney by statute.

The statutory duty of a city attorney to "conduct all law business in which the city or any of its departments shall be interested," is broad and general. The Bank would have us rely upon *Green v. Beste*, 76 N.W.2d 165 (N.D.1956), in construing the statutory authority of the city attorney narrowly. The Bank does not suggest where the Legislature may have in-

tended that the line be drawn except that it should exclude "appeals." In *Green v. Beste* this court described powers of creatures of statute which are "expressly or impliedly conferred." Although we conclude that an appeal is germane to and implied by the words "law business," we nevertheless do not say that a city attorney's decision to appeal a lower court final ruling may not be reviewed and set aside by the governing body or may not be restricted by an ordinance duly enacted.

Two other rulings upon which the Bank relies are *State v. Bakke*, 117 N.W.2d 689 (N.D.1962), and *Channel 10, Inc. v. Independent Sch. Dist. No. 709*, 298 Minn. 306, 215 N.W.2d 814 (1974). In the light of what we have hereinbefore said, both cases are distinguishable and the provisions in Article XI, §§ 5 and 6, of the North Dakota Constitution and § 44–04–19, NDCC, relating to open meetings have no application to this case. We would point out, additionally, that one court has held that when an appellee cross-appeals, there is a waiver of a motion to dismiss appellant's appeal. *See Vanover v. Cline*, 239 Ky. 335, 39 S.W.2d 477 (1931). We deny the Bank's motion to dismiss.

### VACATING ALLEY

The provisions of §§ 40–39–05 through 40–39–08, NDCC, govern vacating procedures. In this case Bank representatives, having obtained an option to purchase lots in the north one-half of Block 72 of the Original Plat in the City of Bismarck, conditional upon the vacating of the alley, contacted officials of the City. The purpose of the Bank was to erect a new bank building, which would encroach upon the alley unless the alley were vacated. At least some of the city officials knew this and, because they wanted to encourage downtown development, they attempted to assist the vacating procedure to the extent of providing the petition form and even obtaining the necessary signatures.

Ultimately a petition satisfactory to the city commission, but contrary to the written advice of the city attorney, was filed and the auditor then published the notice required by § 40–39–06, NDCC, setting the matter for hearing. After the hearing, the Board of City Commissioners adopted the following resolution:

"WHEREAS, all of the owners of property adjoining and contiguous with the north 150 feet of an alley adjacent to Lots 1–6 and 19–24, inclusive, Block 72, Original Plat to the City of Bismarck, North Dakota, have heretofore joined in a petition requesting that said alley be vacated and setting forth the facts and reasons for said vacation, said petition was verified by oath of at least one (1) petitioner and was accompanied by a plat of said alley proposed to be vacated;

"WHEREAS, the Board of City Commissioners of the City of Bismarck, North Dakota, deemed it expedient that said matter be preceded (sic) with, ordered said petition to be filed in the office of the City Auditor.

"WHEREAS, The Board of City Commissioners ordered that notice be given on hearing on the aforesaid petition and the same was so given by publication in the official newspaper of said City on February 4, 21, 28, March 6, 1980, in accordance with law, the Board of City Commissioners at the time appointed, investigate[d] and considered the matter and heard testimony of the persons interested therein; "March 20, 1980

"NOW, THEREFORE, BE IT RESOLVED by the Board of City Commissioners of the City of Bismarck, North Dakota;

"1. Petition heretofore described praying for the vacation of the north 150 feet of an alley adjacent to Lots 1–6 and 19–24, inclusive, Block 72, Original Plat to the City of Bismarck, North Dakota, is in all things allowed and granted.

"2. That said portion of alley is hereby declared vacated, subject to the rights of any franchises, their successors and assigns, heretofore granted by the City of Bismarck, and not heretofore waived or abandoned.

"3. That the City Auditor be and is hereby authorized to publish this resolution in the manner prescribed by law and file a transcript thereof for record in the office of the Register of Deeds, Burleigh County, North Dakota."

The resolution was certified by the city auditor and filed in the office of the Register of Deeds of Burleigh County on March 25, 1980, Document No. 312799. The Bank then exercised its option to purchase the lots in the north one-half of Block 72.

Shortly thereafter, the city commission had before it a different vacating petition in which Commissioner Brosseau had a special interest. The State Bank of Burleigh County was opposed to that vacation and raised a technicality which resulted in delaying the action of the City. The alleged defect involved an abutting owner who signed the petition to vacate after the City had accepted it and published notice of hearing thereon. It was pointed out to the Bank that the same alleged defect occurred in the proceeding to vacate the alley in the north one-half of Block 72. The city attorney again advised the city commissioners that the vacation of the alley in Block 72 was invalid and, in accordance with this advice, the city commission adopted the following resolution:

"WHEREAS, a petition was filed with the City to vacate the north 150 feet of an alley adjacent to Lots 1–6 and 19–24, inclusive, Block 72, Original Plat, and

"WHEREAS, proceedings for vacation based on said petition were thereafter taken by the City resulting in the adoption of a Resolution of Vacation dated March 25, 1980, recorded March 25, 1980 at 12:20 P.M., in the office of the Register of Deeds of Burleigh County, North Dakota, as Document No. 312799, and

"WHEREAS, it has now been found and determined that said petition for vacation did not comply with state law, to-wit: Section 40–39–05 N.D.C.C.

"NOW, THEREFORE, it is RESOLVED that the Resolution of Vacation dated March 25, 1980, is invalid and is hereby vacated and set aside."

The petition allegedly failed to comply with state law in that one of the owners of a lot abutting the alley in the south one-half of Block 72 signed the petition after it had been filed and accepted by the board of city commissioners, and after the notice required by § 40–39–06, NDCC, had been published. The Bank sought to re-petition for the vacation of the alley but soon learned that Commissioner Brosseau had subsequently acquired an interest in one of the lots in the south one-half of Block 72 and had withdrawn "the authorization for vacation" given by the previous owner. That action by Commissioner Brosseau has prompted the Bank to abandon further efforts to re-petition and, instead, it has elected to rely upon the previous Resolution of Vacation, and to bring this action for declaratory judgment.

In a memorandum opinion the trial court declared that:

(1) Only owners of the lots in the north one-half of Block 72 were required by § 40–39–05, NDCC, to be signers on the petition to vacate the alley in the north one-half of Block 72;

(2) All the required signatures on the petition should be affixed before the City accepts the petition and directs the publication of the notice as required by § 40–39–06, however this is not jurisdictional if there is substantial compliance;

(3) There was substantial compliance in this case and no harm resulted from the late signatures;

(4) The published notice was sufficient even though it was not a full disclosure;

(5) The rights of the public were adequately protected;

(6) There was no appeal from the vacation of the alley; and

(7) The resolution to vacate the alley is valid, and the later resolution setting aside the resolution of vacation is of no force and effect.

The judgment declared that the alley in the north one-half of Block 72 is vacated.

Section 40–39–05, in pertinent part, provides that no alley, or parts thereof, shall be vacated *"except on a petition signed by all of the owners of the property adjoining the plat to be vacated."* That specific language was first incorporated into the law by Chapter 190, S.L.1927. Prior thereto, and since first enacted by the Territorial Legislature in 1887, the pertinent language had been *"except upon a petition of a majority of the owners of property on the line of such public grounds, streets or alleys resident within the city."* S.L.1887, Ch. 73, Article 15, § 13.

The words "property adjoining the plat to be vacated" in the present law and the words "property on the line of such ... alleys" from the original law are ambiguous when applied to vacating a "part of an alley." The words "alley" and "plat to be vacated" are not defined in our statutes; however, § 24–01–01.1(22), NDCC, describes an alley as a local street or road. There are many dictionary definitions of "alley," "plat," and "vacate." We are required to adopt those reasonable definitions of "alley" and "plat to be vacated" so that we reach an interpretation of the statute which makes sense and avoids ludicrous and absurd results. *See Skoog v. City of Grand Forks,* 301 N.W.2d 404 (N.D.1981). We will use such extrinsic aids as are available. *Apple Creek Tp. v. City of Bismarck,* 271 N.W.2d 583 (N.D.1978); *see also* §§ 1–02–38 and 1–02–39, NDCC.

■ Our consideration of all matters called to our attention leads us to conclude that the statute requires signatures on a petition to vacate a part of an alley only of those owners of property which adjoins that part of the alley which is sought to be vacated, and not those owners who may own property literally adjoining the "plat to be vacated." Thus, because no lots in the south one-half of Block 72 adjoin that part of the alley in the north one-half of Block 72, signatures of the owners of lots in the south one-half of Block 72 are not required. An interest in continuation of the alley is not the same as owning property adjoining the "plat" [part of the alley] to be vacated.

If all who may have an interest in the alley must be petition signers, there is little purpose in publishing notice or conducting a hearing.

When we examine a companion statute adopted originally by the same 1877 Territorial Legislature, Chapter 109, S.L. 1877—now §§ 40–50–24 and 40–50–25, NDCC—we see that "vacating part of a plat" have long been words used to describe vacating procedure; however, we recognize that it was specifically provided therein that vacating "part of a plat" would not authorize the closing or obstructing of any public highway. Vacating "part of a plat" has never been interpreted in these sections to require a petition by all of the owners of property in the "plat" or adjoining the plat. Section 40–50–22, NDCC. Nonetheless, the rights of those owners are to be protected. Section 40–50–25, NDCC. Although we are concerned with a different statute containing reference to *part of an alley* and *plat to be vacated,* rather than "part of a plat," the analogy is obvious. The Supreme Court of South Dakota pointed out some differences between vacating "part of a plat" and vacating "part of a street" in *In Re Mackrill's Addition,* 85 S.D. 196, 179 N.W.2d 268 (1970).

For the distinction between those matters which are jurisdictional in the vacating procedure from those that are not, *see* Anno:—Highway—Vacation—Procedure, 175 A.L.R. 760 at 771, 773; Anno:—Subdivision Maps or Plats, 11 A.L.R.2d 524 at 587; and *City of Grand Forks v. Flom,* 79 N.D. 289, 56 N.W.2d 324 (1952).

We do not imply that a petition which seeks to vacate a part of an alley or street need not be signed by the owner of every tract of land which abuts the part of the alley or street sought to be vacated. *See Hille v. Nill,* 58 N.D. 536, 226 N.W. 635 (1929). 11 McQuillin, Municipal Corporations, 3d Ed.Rev., §§ 30.196 and 30.199 (1977), provides, among other things, that:

"Vacation can be effected only by a substantial observance of all mandatory legal requirements .... However, slight irregularities will not render such action

void, and by estoppel and laches an irregular vacation may become absolute." 11 McQuillin, *supra*, at 132.

*See also* 62 C.J.S., Municipal Corporations § 84; 39 Am.Jur.2d Highways, Streets, and Bridges §§ 143–149; *Smith v. Anderson*, 144 N.W.2d 530 (N.D.1966); *Park District City of Fargo v. City of Fargo*, 129 N.W.2d 828 (N.D.1964); *Welsh v. Monson*, 79 N.W.2d 155 (N.D.1956); *Eisenzimmer v. Bell*, 75 N.D. 733, 32 N.W.2d 891 (1948); and *City of La Moure v. Lasell*, 26 N.D. 638, 145 N.W. 577 (1914).

## IS THE CITY ESTOPPED BY THE ACTIONS OF ITS AGENTS

"Questions, the answers to which are not necessary to determination of the case, need not be considered." *Hospital Services v. Brooks*, 229 N.W.2d 69 (N.D.1975). The parties have cited cases and authorities which appear to be divided on the question of estoppel against a city. In *Abbey v. State*, 202 N.W.2d 844, 846 (N.D.1972), at syllabus 4, this court said:

"Estoppels against the public are little favored. They should not be invoked except in rare and unusual circumstances, and may not be invoked where they would operate to defeat the effective operation of a policy adopted to protect the public."

In the light of the conclusions we have hereinbefore reached, the issue of estoppel has become academic only. The trial court did not rely on estoppel, nor do we.

## COSTS AWARDED IN DECLARATORY JUDGMENT CASES

Section 32–23–10, NDCC, provides: "In any proceeding under this chapter [authorizing declaratory judgments], the court may make such award of costs as may seem equitable and just." Pursuant thereto, the trial court awarded to the Bank costs of $1,439.50 against the City. The award was in the exact amount requested by the Bank's statement of costs and disbursements. Attorney's fees were not mentioned at any point in the trial court as far as we can determine.

Although the City's notice of appeal specifically noted its dissatisfaction with the award of costs, it has presented no argument on the matter and we assume that that part of the City's appeal has been abandoned. The Bank, on the other hand, cross-appealed because the trial court failed to award it attorney's fees and its entire argument in support of its cross-appeal is:

"Costs in the context of that chapter [Ch. 32–23, NDCC] clearly can be read to include attorney's fees in addition to the other costs involved in the bringing of a declaratory action."

It is elementary that an issue or contention not raised or considered in the lower court cannot be raised for the first time on appeal except on a theory of plain error. *Rummel v. Rummel*, 265 N.W.2d 230 (N.D.1978); *Le Pire v. Workmen's Compensation Bureau*, 111 N.W.2d 355 (N.D.1961). No argument has or can be made that an award of $1,439.50, under the discretionary authority of § 32–23–10, NDCC, is "plain error."

It appears evident that trial courts will be increasingly faced with arguments that attorney's fees "can" be awarded under a statute which authorizes "costs." Professor Sands of the University of Alabama Law School discussed the matter in his article "Attorney's Fees as Recoverable Costs," 63 ABA Journal 510, April 1977. Claims for attorney's fees are significant items in declaratory relief cases to determine duty to defend and coverage by liability insurance carriers. *See, e.g., Aberle v. Karn*, 316 N.W.2d 779 (N.D.1982), and Annotation— Insured's Right to Recover Attorney's Fees, 87 ALR3d 429. It appears that attorney's fees are usually not awarded against a city in declaratory judgment cases. *See City of Vestavia Hills v. Randle*, 292 Ala. 492, 296 So.2d 710 (1974), and *Gettings v. City of Elgin*, 16 Or.App. 140, 517 P.2d 686 (1974). There are cases to the contrary. *See* 12 Uniform Laws Annotated, Declaratory Judgments § 10 Costs.

In this state we have not varied from the general rule for any type of cases, including declaratory judgment cases, that:

"Attorney's fees are not recoverable in an action unless expressly authorized by law. [Citation omitted.] This Court has said that costs (which under some provisions include attorney's fees) are purely the creature of statute and can be awarded only when expressly authorized by statute. [Citation omitted.]" *Hager v. Devils Lake Public School Dist.*, 301 N.W.2d 630, 635 (N.D.1981).

Because the award of costs made by the trial court has not been shown to be an abuse of discretion, it is affirmed.

The judgment is affirmed. Questions of public concern being involved, no costs on appeal will be allowed.

ERICKSTAD, C. J., VANDE WALLE and SAND, JJ., and ROBERT L. ECKERT, District Judge, concur.

ECKERT, District Judge, sitting in place of PAULSON, J., disqualified.