File Name: 06a0821n.06
Filed: November 8, 2006

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 05-2416

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

TRANSPORTATION INS. CO.,

    Petitioner-Appellee,

v.

VALENTINE INVESTMENTS, L.L.C., INC.,

    Defendant,

PRODUCTION PLATING, INC.,

    Defendant,

GUIDEONE MUTUAL INS. CO.,

    Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

                            /

Before:      BOGGS, Chief Judge, MARTIN, Circuit Judge, and OLIVER, District Judge.[*]

      BOYCE F. MARTIN, JR., Circuit Judge. GuideOne Mutual Insurance Company appeals the

district court's grant of summary judgment in favor of Plaintiff Transportation Insurance Company.

Transportation sued, based on diversity jurisdiction, seeking a declaratory judgment that it was not

liable under a liability insurance policy it issued to Production Plating and Valentine Investments,

which it named as co-defendants along with GuideOne. The coverage in question related to damage

---

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern
District of Ohio, sitting by designation.

at a church, insured by GuideOne, which resulted from a fire at the nearby Production Plating/Valentine Investments facility. The district court ruled that Transportation's policy did not include coverage of the damage in question, and thus granted Transportation's motion for summary judgment, denied GuideOne's summary judgment motion, and dismissed the case. For the following reasons, we affirm the district court's decision.

I.

On October 12, 1999, an accidental fire occurred at the Production Plating facility in Eastpointe, Michigan. The fire caused smoke, soot, and ash to infiltrate the neighboring St. Peter's Evangelical Lutheran Church, which was insured by GuideOne. GuideOne paid $249,764.38 for cleaning and repairs, returning the church to pre-fire condition. GuideOne sued Production Plating and Valentine to recover the costs of repair in a separate lawsuit. The district court in that case issued partial summary judgment for liability only in favor of GuideOne and against Valentine, while the issue of damages continues to be litigated.[1] In the meantime, in order to avoid paying damages to GuideOne in the underlying action, Transportation filed this suit to seek a declaratory judgment that its liability insurance policy issued to Production Plating does not cover the damage arising from the fire. The district court found that the coverage was excluded by the policy, and consequently granted summary judgment on behalf of Transportation and entered a declaratory judgment on its

---

[1] Both Valentine and Production Plating filed for bankruptcy after the fire. The bankruptcy-related automatic stay was lifted as to Valentine, but apparently not as to Production Plating, which likely explains why they were not subject to the decision regarding liability in the separate lawsuit. According to the district court's opinion, neither Valentine nor Production Plating filed an answer in this lawsuit, despite being served by Plaintiff. Valentine owned the building that burned; Production Plating leased and operated it.

behalf. The issue presented on appeal is whether the district court correctly interpreted the insurance policy issued by Transportation to not cover the liability of its insureds, Production Plating and Valentine.[2]

We review a district court's grant of summary judgment de novo, and must view "the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the non-moving party." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1996)). Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.* (quoting Fed. R. Civ. P. 56(c)). There is no meaningful factual dispute here. Rather, this case only involves a legal question of contract interpretation, which this Court reviews de novo. This is a diversity case in which the state law of Michigan applies under *Erie R.R. Co. v. Tompkins*. 304 U.S. 64, 78 (1938).

II.

The present appeal hinges on two portions of the Transportation-Production Plating liability

---

[2] The district court made certain rulings regarding the preclusive effects of prior lawsuits. It ruled that a separate interpleader action, filed by Transportation and heard by Judge Friedman, prevented Transportation from arguing that it did not have a duty to defend its insureds, but did not otherwise affect the merits of the Transportation insurance policy. In the case filed by GuideOne against Valentine and Production Plating, Judge Zatkoff ruled that Valentine was liable based on its violation of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), which also binds GuideOne, and prevented GuideOne from "alleging that its claim is anything different than what it claimed in its prior litigation against Valentine." D. Ct. Op. at 8. The parties do not appeal these rulings, nor do they appear to impact the issue as it is presented to us on appeal.

insurance policy. Both provisions are exclusions related to pollution, prefaced with the words "[t]his insurance does not apply to: . . ." They read in pertinent part as follows:

2. Exclusions.

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

. . .

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are preforming operations:

(i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. . .

Subparagraphs (a) and (d)(i) *do not apply to "bodily injury" or "property damage" arising out of heat, smoke, or fumes from hostile fire.* As used in this exclusion a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(emphasis added). GuideOne argues that the hostile-fire exception to this "property-damage exclusion" requires coverage under the policy, because although Transportation is not obligated to pay for property damage arising from the spread of pollutants in general, the hostile fire exception prevents the exclusion from applying here. Transportation does not dispute GuideOne's reading of this exclusion on its own; instead, it relies on the following separate exclusion, also included in the "Pollution" section of exclusions (section 2.f.):

[This insurance does not apply to]

> (2) Any loss, cost or expense arising out of any:
>
>> (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or
>>
>> (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

According to Transportation, this "clean-up exclusion" — to which the hostile fire exception does not apply — defeats its liability under the policy, regardless of the nullification of the property-damage exclusion.

The district court agreed with Transportation's reading of the policy, and determined that the clean-up exclusion defeated coverage altogether, despite the hostile fire exception to the property-damage exclusion. It noted that the underlying action, which was determinative of the subject of the policy, "alleges a violation of CERCLA whereby St. Peter's was forced to incur costs to remediate potential contamination caused by the fire." D. Ct. Op. at 9. Because the underlying action involved cleaning up the church, the district court reasoned that only the clean-up exclusion was relevant. The district court relied on the Michigan Court of Appeals case of *Hawkeye-Security Ins. Co. v. Vector Construction Co.*, 185 Mich. App. 369 (Mich. Ct. App. 1990), for the proposition that exclusions in an insurance policy are to be read separately, and where they are incongruous to one another cannot create an ambiguity in the policy.

GuideOne attempts to circumvent this reasoning on appeal in several ways. First, it argues that the damage to the church in fact amounted to property damage. Next, it contends that *Hawkeye*

is not applicable in this case because the property-damage exclusion and the clean-up exclusion are really two related parts of a single exclusion — the "pollution exclusion." Finally, it contends that the policy must be read as a harmonious whole, whereby the hostile fire exception would be relevant in interpreting both the clean-up exclusion and the property-damage exclusion.

GuideOne's arguments are not availing. In its description of the damage to the church, which it attempts to portray as property damage, it characterizes as "repairs" activities that clearly amount to cleaning the pollutants from the church. Because they primarily involve cleaning pollutants, these activities fall more squarely under the clean-up exclusion. Had the smoke been so severe as to cause structural damage to the church property, the issue might be more complicated. In such a scenario, for example, the structural damage might be covered because of the hostile fire-exception to the property-damage exclusion, while the accompanying clean up of ash and soot would not be covered based on the clean-up exclusion. In the instant case, however, given the nature of the work that had to be done on the church — cleaning up pollutants and not repairing structural damage — the district court's conclusion that the clean-up exclusion governed was correct.

GuideOne's other arguments, that the two exclusions are really a single exclusion, that they should be read as a harmonious whole, and that the hostile fire exception would be negated by the district court's interpretation, are all contravened by Michigan law. The Michigan Court of Appeals stated in *Hawkeye* that "each individual exclusion refers, not to the other exclusions, but to the hazards insured against by the insurance contract. Accordingly, 'exclusions are to be read with the insuring agreement, independently of every other exclusion.'" 185 Mich. App. at 384 (quoting *Stillwater Condo. Assoc. v. Am. Home Assurance Co.*, 508 F. Supp. 1075, 1079 (D. Mont. 1981)

(emphasis omitted)); *see also English v. Blue Cross Blue Shield*, 263 Mich. App. 449, 471 (Mich. Ct. App. 2004) ("Exclusions limit the scope of coverage provided and are to be read with the insuring agreement and independently of every other exclusion."). A plain reading of the structure and language of the contract here is that it provides two separate exclusions: 1) it does not cover repairs of *property damage* (or compensation for bodily harm) caused by pollutants, unless they are caused by a hostile fire, and 2) it does not cover *clean up* of pollutants, period. The hostile-fire exception explicitly only applies to the property-damage exclusion. Reading the policy otherwise would contravene the rule that exclusions are read to be independently. Thus, the clean-up exclusion independently defeats coverage under this policy, as the district court properly found.

GuideOne also claims that because the damages suffered by St. Peter's include loss of use of the facility during the clean up, the property-damage exclusion and accompanying hostile-fire exception govern the damage here. The fact that some of St. Peter's damages involve loss of use as well as clean up costs does not affect our determination that the clean-up exclusion governs. That exclusion reaches "*[a]ny loss, cost or expense* arising out of any . . . [r]equest, demand or order that any insured . . . clean up, remove, . . . or in any way respond to, or assess the effects of pollutants." (emphasis added). The loss of use damages suffered by St. Peter's amount to a loss, cost, or expense under this exception, as the church had to temporarily close while the pollutants were cleaned up. As with any of St. Peter's other damages, had the loss of use been related to physical property damage instead of a mess that had to be cleaned up, the hostile-fire exception could have been invoked. However, because the church could not be used during clean-up of pollutants caused by a hostile fire, and there is no hostile-fire exception to the clean-up exclusion, the fact that the

damages included loss of use is not particularly relevant.

At oral argument, counsel for GuideOne repeatedly suggested that the district court's reading of the contract was "radical" and that it would send a "huge aftershock" through the insurance industry. We are in fact left with the opposite impression. As the district court aptly noted, "insurance companies include an exclusion like (f)(2) [because] they do not want to be faced with catastrophic exposure of covering clean-up costs, as in this case." D. Ct. Op. at 9. Moreover, if undesirable results follow from the rule that an exception to one exclusion does not apply to other exclusions that lack the same exception, then insurance companies and their insureds have an easy solution — they can simply draft the policy to include the relevant exception for each exclusion to which it should apply. The parties to the insurance agreement are clearly in a much better position to make this adjustment than any court would be.

## III.

For the foregoing reasons, the district court's declaratory judgment in favor of Transportation is affirmed.