DUNDEE MUTUAL INSURANCE COMPANY, Plaintiff, Appellee and Cross–Appellant,

v.

Sandra BALVITSCH and Frank Balvitsch, Defendants,

Vernon Hoyt as Personal Representative of the Estate of Corey Hoyt, deceased, and Vernon R. Hoyt as Trustee of the heirs at law of Corey Hoyt, deceased, Defendant, Appellant and Cross–Appellee.

Civ. No. 950068.

Supreme Court of North Dakota.

Nov. 30, 1995.

Thomas E. Rutten (argued) of Traynor, Rutten & Traynor, Devils Lake, for plaintiff, appellee and cross-appellant.

Paul R. Oppegard (argued) of Smith Bakke Hovland & Oppegard, Moorhead, MN, for defendant, appellant and cross-appellee.

MESCHKE, Justice.

Vernon Hoyt, as personal representative of the estate of Corey Hoyt (Estate), appealed a judgment declaring that a farm liability policy issued by Dundee Mutual Insurance Company to Frank and Sandra Balvitsch covered their pickup in a collision that killed Corey, and that Dundee had not waived its right to assert other defenses to a settlement between the Estate and the Balvitsches. We direct the trial court to modify the judgment by striking the clause about no waiver of other defenses to the settlement and, as modified, we affirm the judgment.

The collision occurred in August 1992 at the intersection of State Highway 200 and a township road adjoining the Balvitsches' farm. Sandra Balvitsch was driving lunch to

her husband, Frank, who was doing farm work in a nearby field. Sandra's pickup and Hoyt's motorcycle collided, killing Rhonda Hoyt and Corey Hoyt.

Corey's Estate sued Balvitsches for his wrongful death. The Balvitsches had automobile insurance for the pickup with State Farm Insurance and liability insurance for their farming operations with Dundee. State Farm accepted a tender of the Balvitsches' defense; however, Dundee denied coverage and did not defend the Balvitsches.

In September 1993, the Estate and the Balvitsches settled the wrongful death action for $600,000, agreeing that the Estate would "accept $100,000 from State Farm and [would] seek payment of the remaining $500,-000 in damages solely from [the Balvitsches'] insurer, Dundee ... and not from [the Balvitsches] personally nor from State Farm." The agreement said it was intended to serve the purposes of the settlements in *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982) and *Sellie v. North Dakota Ins. Guar. Ass'n*, 494 N.W.2d 151 (N.D.1992). A $600,000 stipulated judgment was entered in Cass County in the wrongful death action.

The parties tell us that the Estate served a garnishment summons on Dundee in October 1993 and that Dundee there disclosed that it did not owe the Balvitsches anything. However, the garnishment summons, disclosure, and subsequent proceedings are not part of this record.

In November 1993, Dundee sued the Estate and the Balvitsches in Foster County, for a declaratory judgment that its farm liability policy with the Balvitsches did not cover the collision and death of Corey Hoyt. The trial court granted summary judgment for the Estate, concluding that Dundee's policy covered the collision. The judgment also declared "that Dundee Mutual has not waived and is not estopped from asserting defenses it may have against the enforcement or validity of the judgment rendered against its insureds, Sandra and Frank Balvitsch, which was entered pursuant to the *Miller–Shugart* settlement agreement" between the Estate and the Balvitsches. The Estate appealed, and Dundee cross-appealed.

Dundee's cross-appeal contends the trial court erred in holding its farm liability policy with the Balvitsches covered this collision. Dundee asserts that a limitation of its organizational act in NDCC 26.1–13–16 is part of its insurance contract under state law, and that this limitation on its powers prohibits it from insuring a motor vehicle operated upon any highway. Dundee concedes, absent that statutory prohibition against a county mutual insurance company issuing automobile liability coverage, its farm liability policy would cover this collision.

Dundee's farm liability policy covers "[a]ll operations of the insured which are necessary or incidental to farming." This policy excludes coverage for "the ownership, maintenance or use of automobiles while away from the premises or the ways immediately adjoining" the premises. The scope of that exclusion, "while away from the premises or the ways immediately adjoining" the premises, does not exclude overage for use of a vehicle on the premises and on the immediately adjoining "ways." This creates an exclusion from the exclusion of coverage for the use of automobiles. In *Applegren v. Milbank Mut. Ins. Co.*, 268 N.W.2d 114 (N.D. 1978), we held that, when an insurance policy contains an exclusion to an exclusion from coverage, coverage exists for the exclusion to the exclusion. Under *Applegren*, Dundee's farm liability policy with the Balvitsches thus insures the use of automobiles for "operations ... incidental to farming" on the "premises or the ways immediately adjoining" them. We therefore agree with Dundee that the farm liability policy covers this collision at the intersection of ways immediately adjoining Balvitsches' farm, and our analysis turns to the statutory prohibition against a county mutual insurance company issuing automobile liability coverage.

Dundee is organized under NDCC ch. 26.1–13 regulating the organization and activities of county mutual insurance companies. NDCC 26.1–13–16 says:

> Any county mutual insurance company may make insurance contracts against loss, expense, or liability by reason of bodily injury or death by accident, disability, sickness, or disease suffered by others for

which the insured may be liable or may have assumed liability, *except no liability insurance contracts against any or all loss or expense resulting from the ownership, maintenance, or use of any motor vehicle normally operated, intended to be operated, or designed for use, upon any highway, road, or street in this state, may be made.* (Emphasis added). Dundee relies on this statutory prohibition that circumscribes its insuring activities.

■■■ The interpretation of a statute is a question of law. *Continental Casualty Co. v. Kinsey,* 499 N.W.2d 574 (N.D.1993). We construe statutes to ascertain the intent of the Legislature. *Id.* Statutes must be considered as a whole and in relation to other provisions, with each provision harmonized, if possible, to avoid conflicts. *Id.* When read together, the provisions of NDCC ch. 26.1–13 do not preclude a county mutual insurance company from insuring against liability for loss or damage by a vehicle incidental to farming operations.

A county mutual insurance company is largely restricted to insuring property in rural areas outside of an incorporated city. *See* NDCC 26.1–13–15. Despite the limitation of NDCC 26.1–13–16, "[a] county mutual insurance company may insure against loss or damage by ... vehicles." NDCC 26.1–13–14. When construed together, we believe the provisions of NDCC ch. 26.1–13 do not preclude a farm liability policy from covering loss or damage by vehicles incidental to a farming operation.

■■■ Furthermore, NDCC 26.1–13–12 says that, subject to exceptions not applicable here, "[a] county mutual insurance company possesses the powers and is subject to the liabilities and duties of other insurance companies." NDCC 26.1–13–13 declares that "[i]n all respects not specifically provided for in this chapter, county mutual insurance companies are subject to the provisions of this title relating to insurance companies generally." NDCC 26.1–05–01 directs in part that "[t]he general law governing profit corporations applies to an incorporated domestic insurance company so far as the provisions are pertinent and not in conflict with provisions contained in this title relating to

the company." NDCC 10–19.1–28, governing profit corporations, directs in part that "[n]o act of a corporation ... is invalid by reason of the fact that the corporation was without capacity or power to do such act ...." except under circumstances not here applicable. *Cf.,* NDCC 26.1–02–07 ("failure of an insurance company transacting business in this state to obtain a certificate of authority does not impair the validity of any act or contract of the company"). Dundee's insurance contract with the Balvitsches is an "act" within the meaning of NDCC 10–19.1–28. *Cf.,* NDCC 26.1–02–06 (act of making insurance contract effected by mail or otherwise constitutes the transaction of insurance business in this state). We find no specific statute that removes a county mutual insurance company from the application of NDCC 26.1–13–12, 26.1–13–13, 26.1–05–01 and 10–19.1–28. Therefore, Dundee cannot claim that the terms of its insurance policy covering liability for motor vehicles on the premises or ways immediately adjoining the premises are invalid. We affirm the declaratory judgment of coverage.

In its appeal, the Estate contends that the trial court erroneously concluded Dundee had not waived any defenses it may have to the *Miller–Shugart* settlement. The Estate argues that Dundee's failure to raise other defenses to the settlement in this declaratory judgment action about coverage effectively waived other defenses to the settlement. Our analysis needs to consider the effect of a *Miller–Shugart* settlement.

In *Miller v. Shugart,* 316 N.W.2d 729 (Minn.1982), the Minnesota Supreme Court considered a similar settlement for a single-car accident. Miller, the plaintiff, had been a passenger in a car owned by defendant Locoshonas and driven by defendant Shugart. While Milbank was litigating whether it covered both the car owner and driver, the owner and driver settled with Miller and confessed judgment for a stipulated amount, collectible only from the proceeds of any applicable insurance. After judgment against Milbank in its declaratory judgment action, Miller garnished Milbank to collect on her settlement judgment. After the Minnesota Supreme Court summarily affirmed the

coverage judgment in Milbank's declaratory action on appeal, the trial court granted Miller's motion for summary judgment in the garnishment, concluding that Miller was entitled to recover the policy limits from Milbank. On appeal from that summary judgment, the Minnesota Supreme Court held in *Miller v. Shugart* that a garnishment of the insurer was an appropriate procedure to collect the settlement judgment. The court concluded that the settlement judgment was not the product of fraud or collusion and that Miller had satisfied her burden of showing the settlement was reasonable.

A *Miller–Shugart* type of settlement was first considered by us in *Sellie v. North Dakota Ins. Guar. Ass'n,* 494 N.W.2d 151 (N.D.1992). Sellie sued SCR and its employee for her injuries when she was hit with a "hand truck" operated by SCR's employee. SCR's insurer denied coverage and refused to defend SCR. Sellie, SCR, and the employee agreed to a *Miller–Shugart* settlement that stipulated a $128,000 judgment to be satisfied only from the proceeds of SCR's insurance. Sellie then sued the insurer for a declaration that SCR's insurance covered her injury and to enforce the stipulated judgment. The trial court ruled that the insurer could contest coverage and that SCR's insurance did not cover Sellie's injury. On appeal, we held that the insurer could contest coverage under the policy.

We explained in *Sellie* that, although *Miller v. Shugart* did not involve an abandoned insured like Sellie was, Minnesota law did not preclude an insurer who abandons an insured from contesting coverage in a later action to collect a settlement judgment. We concluded that SCR's policy covered Sellie's injury. We also concluded that there was no evidence offered that the settlement was the product of fraud or collusion and that the record supported the trial court's finding that the settlement was reasonable.

Dundee began this separate declaratory action only to determine whether the terms of its policy insured the Balvitsches for Corey's death. Dundee was entitled to sue under the specific provisions of NDCC 32–23–06: "... the court shall ... enter a declaratory judgment ... in an action brought by or against an insurance company to determine liability of the insurance company to the insured to defend, or duty to defend...." In *Blackburn, Nickels & Smith, Inc. v. Nat'l Farmers Union Property & Casualty Co.,* 452 N.W.2d 319, 323 (N.D.1990), we held this statute required "the trial court to render a declaratory judgment to determine both coverage and duty to defend, whether or not the insured's liability has been determined."

But this declaratory action did not try to enforce the settlement judgment. *See Sellie* (action to enforce settlement judgment and to obtain declaratory judgment on coverage); *Shugart* (action to enforce settlement judgment after coverage determined in separate declaratory judgment action). The only question before the trial court here was coverage of Dundee's farm liability policy with the Balvitsches.

What is more, no record of the garnishment proceeding was developed in this case, and questions about enforcement of the settlement were not raised in this action by either Dundee's complaint, the Estate's answer, or a counterclaim by the Estate. Neither party took any steps to decide in this case the other possible defenses of reasonableness and propriety of the settlement. Any decision about possible waiver of those defenses to the settlement in this declaratory action would be an advisory opinion without a record.

■ We hold that the clause in the declaratory judgment, "that Dundee Mutual has not waived and is not estopped from asserting defenses it may have against" the settlement judgment, is improper. Whether other defenses to the settlement exist, have been waived, or are overcome must be decided in the garnishment or a similar proceeding to enforce the settlement judgment.

We direct the trial court to strike the clause in the judgment about defenses to the settlement and, as modified, we affirm the judgment.

NEUMANN and SANDSTROM, JJ., concur.

LEVINE, J., concurs in the result.

VANDE WALLE, Chief Justice, concurring in result.

I agree with the majority that we harmonize statutes to avoid conflicts, but we do not read the statutes to create conflicts in order that we might harmonize them. *E.g., Burlington Northern v. State,* 500 N.W.2d 615 (N.D.1993). I see no conflict between sections 26.1–13–14, 26.1–13–15, and section 26.1–13–16, NDCC. Section 26.1–13–14, NDCC, is a general statute which includes vehicles. Section 26.1–13–15, NDCC, is a statute dealing with territorial limits of policies covering all types of insurance on property. Its reference to covering "vehicles" while temporarily removed from the premises of the insured is an exception to the previous provision in that section which prohibits county mutuals from insuring property beyond the mutual's authorized territory of operation. Neither it nor section 26.1–13–14, NDCC, refers to vehicles normally operated or intended to be operated on roads or streets nor should they be so read.

More significantly, if there is a conflict the special statute supersedes the general statute. *E.g., Matter of Estate of O'Connell,* 476 N.W.2d 8 (N.D.1991) [In construing statutes, specific provisions prevail over general provisions relating to same subject matter, absent manifestation of legislative intent to contrary]. Not only does section 26.1–13–15, NDCC, refer generally to "vehicles" in a territorial sense, whereas section 26.1–13–16, NDCC, refers to motor vehicles normally operated or intended to be operated on roads or streets, section 26.1–13–16, NDCC, limits only *liability* contracts whereas sections 26.1–13–14 and 26.1–13–15, NDCC, refer to all types of property insurance. Section 26.1–13–16, NDCC, is clearly a special statute that prevails notwithstanding any conflict, real or imagined, with sections 26.1–13–14 and 26.1–13–15, NDCC. I do not agree, therefore, that when read together the county mutual is authorized to issue liability insurance on motor vehicles normally operated or intended to be operated on streets and highways even when used incidental to a farming operation.

Nevertheless, I agree the *policy,* by the exclusion to the exclusion, covers automobiles used on the premises or the way immediately adjoining the premises, and this accident apparently happened while Sandra was on her way to a nearby field.

Furthermore, I agree with the majority that the county mutual cannot claim that the provisions in its insurance policy providing liability coverage for motor vehicles on the premises or ways immediately adjoining the premises is invalid because it was without power to include that provision in its policy under section 26.1–13–16, NDCC.

I concur in the result.