1998 ND 109

Dennis **FISHER** and Dorothy Fisher, as assignees of Scott Delaney, dba Delaney Construction, and Kensok's Hardwood & Seamless Floors, Plaintiffs and Appellants

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,** Defendant and Appellee

Civil No. 970315.

Supreme Court of North Dakota.

June 4, 1998.

Bruce A. Schoenwald, Fargo, for plaintiffs and appellants.

Steven L. Marquart, of Cahill & Marquart, Moorhead, MN, for defendant and appellee.

NEUMANN, Justice.

[¶ 1] Dennis Fisher and Dorothy Fisher appealed a judgment dismissing their complaint against American Family Mutual Insurance Company (American Family) to recover on a judgment entered pursuant to a *Miller–Shugart* [1] agreement. We reverse and remand.

I

[¶ 2] Fishers hired Delaney Construction (Delaney) of Moorhead, Minnesota, to install approximately 500 square feet of hardwood flooring in their Fargo home. The flooring was supplied to Delaney by D & J Hardwoods and Milling (D & J) of Park Rapids, Minnesota. After the flooring was installed, Fishers hired Kensok's Hardwood & Seamless Floors, Inc. (Kensok's) of West Fargo, North Dakota, to sand the flooring and apply a polyurethane finish.

[¶ 3] Within a few months, wide gaps began to appear between sections of flooring and individual boards began splitting. Fishers sued Delaney in Minnesota district court for $7,626, alleging Delaney negligently installed the hardwood flooring. Delaney counterclaimed against Fishers and filed a third-party complaint against Kensok's and D & J.[2] Kensok's submitted the pleadings to its liability insurer, American Family. In a letter of May 15, 1996, American Family denied coverage and declined to defend the claim against Kensok's, asserting the following grounds:

> "As stated in Paragraph 4 of the Complaint, this case arises out of a contract between plaintiffs and Delaney Construction. The liability coverage provided by your policy with American Family has a specific exclusion for contractual liability. *See* Exclusion 2(b).

> "The Third–Party Complaint against you by Delaney Construction alleges in Paragraph VII that the flooring was improperly prepared and/or the finishing improperly applied. Again, I would invite your attention to the Exclusions section of your liability coverage with American Family, specifically Exclusions k and l. Under these provisions, liability coverage does not apply to damage to or arising out of your product or your work. Your coverage with American Family is not intended to provide a guarantee for your work or products. Rather, it is intended to provide payment for bodily injury or property damage arising out of an occurrence. Occurrence is also specifically defined in your policy and is generally referred to as an accident. As indicated in the Complaint, this claim arises from a contract, not an accident."

Kensok's retained counsel at its own expense, answered Delaney's third-party complaint, counterclaimed against Delaney, and crossclaimed against D & J. The parties entered into an agreement under which Fishers dismissed their complaint without prejudice; Delaney dismissed its counterclaim without prejudice; Kensok's dismissed its counterclaim and crossclaim without prejudice; Delaney assigned to Fishers all its rights under the third-party complaint against Kensok's; Kensok's stipulated that judgment be entered against it on the third-party complaint for $7,626, but provided, in accordance with *Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982) and *Sellie v. North Dakota Ins. Guar. Ass'n*, 494 N.W.2d 151 (N.D.1992), "said judgment may only be collected from the proceeds of any applicable insurance insuring KENSOK'S for the loss"; and Kensok's assigned to Fishers all its rights against American Family, including attorney fees it might

---

**1.** "Under *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982), an insured defendant may stipulate for settlement of a plaintiff's claims and stipulate judgment may be collected only from the proceeds of any insurance policy, with no personal liability to the defendant." *Medd v. Fonder*, 543 N.W.2d 483, 485 (N.D.1996).

**2.** An inspector engaged by Delaney stated in an affidavit that the condition of the floor did not appear to result from any breach of duty by Delaney, but was "more likely the result of one or more of the following:" "Natural contraction and expansion of the wood flooring … Panelization or adhering together of sections of the flooring caused by the finishing done by the floor finisher … Improper milling and/or kiln drying of the lumber before it was supplied for installation."

have because of the insurer's failure to provide a defense.

[¶ 4] Judgment was entered in Minnesota district court in accordance with the parties' agreement. Fishers then brought this suit against American Family in North Dakota district court to recover $7,626 from American Family, pursuant to the *Miller–Shugart* agreement. The trial court granted American Family's motion for summary judgment, concluding American Family "owes no coverage to Kensok's for all or part of the claims made against it by reason of the exclusions in the policy" and the *Miller–Shugart* agreement, therefore, was unenforceable. Fishers appealed to this court.

## II

[¶ 5] Summary judgment under Rule 56, N.D.R.Civ.P., is a procedural device for deciding an action without trial if there is no genuine dispute as to material facts or the inferences to be drawn from undisputed facts or if only a question of law is involved, *Hougum v. Valley Mem'l Homes*, 1998 ND 24, ¶ 7, 574 N.W.2d 812, or if the law is such that resolution of any factual dispute will not alter the result, *Littlefield v. Union State Bank*, 500 N.W.2d 881, 883 (N.D.1993). This case turns on the interpretation of Kensok's commercial general liability policy issued by American Family. "Determining the legal effect of an insurance contract is generally a question of law for a court to decide." *Sellie*, 494 N.W.2d at 156. On appeal, we independently examine and construe the insurance policy to determine if the trial court erred in its construction. *Id.* The interpretation of an insurance policy, including whether it is ambiguous, is a question of law, which is fully reviewable on appeal. *Johnson v. Center Mut. Ins. Co.*, 529 N.W.2d 568, 570 (N.D. 1995). An ambiguity exists when good arguments can be made for two contrary positions about the meaning of a term in a document. *Sellie*, 494 N.W.2d at 156.

[¶ 6] "[A] term in an insurance policy should be construed 'to mean what a reasonable person in the position of the insured would think it meant.'" *Sellie*, 494 N.W.2d at 157, *quoting Haugen v. Auto–Owners Ins. Co.*, 191 N.W.2d 274, 279 (N.D.

1971). "Limitations or exclusions from broad coverage must be clear and explicit." *Emcasco Ins. Co. v. L. & M Devel., Inc.*, 372 N.W.2d 908, 911 (N.D.1985). "[W]hen the language of an insurance policy is clear and explicit, the language should not be strained in order to impose liability on the insurer." *Aid Ins. Svcs., Inc. v. Geiger*, 294 N.W.2d 411, 414 (N.D.1980). However, any ambiguity or reasonable doubt as to the meaning of an insurance policy is strictly construed against the insurer and in favor of the insured. *Aid Ins. Svcs., Inc.*, 294 N.W.2d at 414; *Applegren v. Milbank Mut. Ins. Co.*, 268 N.W.2d 114, 118 (N.D.1978). "If the language in an insurance contract will support an interpretation which will impose liability on the insurer and one which will not, the former interpretation will be adopted." *Aid Ins. Svcs., Inc.*, 294 N.W.2d at 414. Exclusions from broad coverage in an insurance policy are strictly construed against the insurer. *Johnson*, 529 N.W.2d at 570. An exception to an exclusion from broad coverage results in coverage. *See Dundee Mut. Ins. Co. v. Balvitsch*, 540 N.W.2d 609, 611 (N.D.1995); *Emcasco Ins. Co.*, 372 N.W.2d at 910–11; *Applegren*, 268 N.W.2d at 118.

## III

[¶ 7] Kensok's American Family commercial general liability policy provides in part:

"COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

"1. Insuring Agreement.

"a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages.

\*   \*   \*   \*   \*   \*

"2. Exclusions.

"This insurance does not apply to:

\*   \*   \*   \*   \*   \*

"b. 'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the

assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

"(1) Assumed in a contract or agreement that is an 'insured contract,' provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement; or

"(2) That the insured would have in the absence of the contract or agreement.

\* \* \* \* \* \*

"j. 'Property damage' to:

\* \* \* \* \* \*

"(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

"(6) That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

\* \* \* \* \* \*

"Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.'

"k. 'Property damage' to 'your product' arising out of it or any part of it.

"l. 'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'

"This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

[¶ 8] Section V of the policy contains the following relevant definitions:

"11. a. 'Products-completed operations hazard' includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising

out of 'your product' or 'your work' except:

"(1) Products that are still in your physical possession; or

"(2) Work that has not yet been completed or abandoned.

\* \* \* \* \* \*

"14. 'Your product' means:

"a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

"(1) You;

"(2) Others trading under your name; or

"(3) A person or organization whose business or assets you have acquired; and

\* \* \* \* \* \*

"15. 'Your work' means:

"a. Work or operations performed by you or on your behalf; and

"b. Materials, parts or equipment furnished in connection with such work or operations.

" 'Your work' includes:

"a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work;' and

"b. The providing of or failure to provide warnings or instructions."

### IV

■ [¶ 9] Fishers contend exclusion b, dealing with assumed contractual liability, upon which American Family relied in its May 15, 1996, letter declining to defend the claim, does not limit coverage. "The key to understanding this exclusion, and its very important exception, is the concept of liability 'assumed' by the insured." 2 Rowland H. Long, *The Law of Liability Insurance* § 10.05[2] (1998). "[I]n the CGL policy and other liability policies an 'assumed' liability is generally understood and interpreted by the courts to mean the liability *of another* which one 'assumes' in the sense that one agrees to indemnify or hold the other person harmless

therefor." *Id.* We conclude exclusion b is inapplicable.

## V

■ [¶ 10] American Family contends: "The damage to the maple flooring allegedly caused by Kensok's work on the flooring, constitutes 'property damage' to a 'particular part of real property in which [Kensok's] was performing operations' which falls clearly within Exclusion j(5)." However, that exclusion may be interpreted in several ways:

"[T]here are at least three reasonable ways of interpreting the paragraph at issue. First, the Court could emphasize the phrase 'are performing operations' and determine ... the exclusion would be restricted to damage occurring to property on which the insured is performing work at the time the work is being performed. Second, the Court could read the 'are performing operations' language to define 'that particular part of real property,' distinguishing it from the other real property existing at the worksite. Under such an interpretation, the phrase 'are performing' would not contain a temporal element, and the phrase 'arises out of' would imply that any damages, no matter when they occurred, were excluded as long as they resulted from the operations. Finally, the reader might attempt to reconcile the two phrases by interpreting them to mean that while the occurrence causing the damage must take place at the time work is being performed, damage may occur at any time so long as it results from a contemporaneous occurrence.

"Because three separate interpretations are possible, the Court finds that the phrase is truly ambiguous. Therefore, the Court construes the paragraph against the insurer and in favor of the insured and holds that the only damage which is excludable is damage which occurred during the time defendant worked upon the property."

*Action Auto Stores, Inc. v. United Capitol Ins. Co.,* 845 F.Supp. 428, 435 (W.D.Mich. 1993). *See also Spears v. Smith,* 117 Ohio App.3d 262, 690 N.E.2d 557, 559 (1996) (citation omitted) ("the phrase 'are performing operations' [in exclusion j(5) ] is written in the present tense.... Thus, in unambiguous terms, exclusion 2 (j)(5) bars coverage only for damage involving 'works in progress.' ") Because exclusion j(5) will support interpretations imposing or not imposing liability, it is ambiguous, and the ambiguity must be strictly construed against the insurer and in favor of the insured. *E.g., Aid Ins. Svcs., Inc. v. Geiger,* 294 N.W.2d 411, 414 (N.D.1980). We, therefore, conclude exclusion j(5) excludes coverage only for property damage during the time Kensok worked upon the property.[3]

## VI

■ [¶ 11] American Family asserts the "policy did not contain a 'Products–Completed Operation' endorsement for coverage. Rather, it contains a definition for 'Products–Completed Operations Hazard.'" Fishers contend "The Kensok Policy Contained Separate Products–Completed Operations Hazard Coverage" because "the Declarations page of the policy clearly and unambiguously sets forth coverage for 'Products–Completed Operations' in the aggregate limit of $2,000,-000." Because the policy contains an exception to exclusion j(6), we conclude the policy includes products-completed operations coverage without a separate endorsement. *Cf.*

---

**3.** Fishers contend American Family may not rely on exclusion j(5) because it did not assert it as a ground in its May 15, 1996, letter to Kensok's denying coverage and declining to defend the claim against Kensok's. American Family contends it is not estopped from relying on exclusion j(5) because "claimants here cannot point to any real prejudice in American Family's present reliance upon this exclusion in the policy."

"Generally, an insurer which denies liability on specified grounds may not subsequently attempt to deny liability on different grounds." *D.E.M. v. Allickson,* 555 N.W.2d 596, 599 (N.D.

1996). Without specific notice of the grounds upon which an insurer disclaims coverage, " 'a claimant might have difficulty assessing whether the insurer will be able to disclaim successfully. This uncertainty could prejudice the claimant's ability to ultimately obtain recovery.' " *D.E.M. v. Allickson,* 555 N.W.2d at 600, *quoting General Accident Ins. Group v. Cirucci,* 414 N.Y.S.2d 512, 46 N.Y.2d 862, 387 N.E.2d 223, 225 (1979). As we construe exclusion j(5), we need not measure Fishers' prejudice, if any, from American Family's belated reliance on exclusion j(5).

*Paradigm Ins. Co. v. Texas Richmond Corp.,* 942 S.W.2d 645, 651 (Tex.App.1997).

[¶ 12] Exclusion j(6), excludes property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." By itself, that language might exclude damage to the flooring caused by Kensok's work in sanding and sealing the flooring. However, a sentence following exclusion j(6) provides the exclusion "does not apply to 'property damage' included in the 'products-completed operations hazard'." Under our decisions in *Dundee Mut. Ins. Co., v. Balvitsch,* 540 N.W.2d 609, 611 (N.D. 1995); *Emcasco Ins. Co. v. L & M. Devel., Inc.,* 372 N.W.2d 908, 910–11 (N.D.1985); and *Applegren v. Milbank Mut. Ins. Co.,* 268 N.W.2d 114, 118 (N.D.1978), that exception to exclusion j(6) from the policy's broad coverage provides coverage for property damage included in the products-completed operations hazard.

[¶ 13] The policy defines the products-completed operations hazard as including " 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned." The damage to the flooring installed in Fishers' house falls within this definition. The damage occurred in a home away from premises owned or rented by Kensok's, it arose out of Kensok's work on the flooring, the product was no longer in Kensok's possession, and Kensok's work in the home had been completed. Thus, damage to the flooring arising out of Kensok's product or work was not excluded by exclusion j(6) and was covered by the policy because of the exception or exclusion of property damage included in the products-completed operations hazard from exclusion j(6).

[¶ 14] We conclude coverage for the damage to the flooring installed in Fishers' home is not excluded by exclusions b or j in Kensok's American Family insurance policy.

## VII

[¶ 15] The cost of the sanding and finishing done by Kensok's is not addressed in exclusions b or j. Property damage to Kensok's "product" or "work," arising out of Kensok's product or work is addressed in exclusions k and l, which exclude from coverage:

"k. 'Property damage' to 'your product' arising out of it or any part of it.

"l. 'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'

"This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

American Family contends:

"Reading these exclusions [j(6), k, and l] together, coverage would be available for damage to the property upon which the insured was working, but there would be no coverage for the insured's work or the insured's product. Applying these exclusions to this case, if one were to look at no other exclusions in the policy, the policy would provide coverage for repair and replacement of the flooring, but would not provide coverage for replacement of the finish or the labor in applying the finish, which was the insured's work and product."

We agree.

"The injury to products or work exclusion is intended to exclude insurance for damage to the insured's product or work, but not for damage caused by the insured's product or work. Thus, the exclusion does not apply where the product or work causes damages to other persons or property. In such a situation, while there would not be coverage for damage to the work or product itself, damages caused by the product to other work or products would be covered."

3 Rowland H. Long, *The Law of Liability Insurance* § 11.09[2] (1998).

"The injury to work or products exclusion is consistent with the goal of the CGL, which is to protect the insured from the

claims of injury or damage to others, but not to insure against economic loss sustained by the insured due to repairing or replacing its own defective work or products."

3 Long, at § 11.09[2].

[¶ 16] Exclusions k and l exclude from coverage the cost of the finish and the sanding and finishing performed by Kensok's. *See Geddes & Smith, Inc. v. Saint Paul Mercury Indemnity Co.*, 63 Cal.2d 602, 47 Cal.Rptr. 564, 407 P.2d 868 (1965). In *Geddes*, a contractor purchased doors and installed them in houses. After the houses were completed, defects appeared in the doors and the contractor had to replace them. The insurer of the supplier of the doors contended coverage was excluded by a provision, exclusion (e), excluding "injury to or destruction of (1) any goods or products manufactured, sold, handled or distributed by the Insured or work completed by the Insured out of which the accident arises." 47 Cal. Rptr. at 566 n. 2, 407 P.2d at 870 n. 2. The court said: "Thus, while the cost of the doors themselves is within Exclusion (e) of the policy, defendant is liable for the expense of installing the replacement doors in addition to the cost of removing those that were defective." 47 Cal.Rptr. at 568, 407 P.2d at 872. The court reached a similar result in *St. Paul Fire & Marine Ins. Co. v. Sears, Roebuck & Co.*, 603 F.2d 780 (9th Cir.1979), involving urethane roofing material supplied by Sears, Roebuck & Co. The urethane membrane was defectively applied, requiring that it be removed, the roof cleaned, patched and prepared, and a new urethane membrane applied. Sears, Roebuck's insurer argued liability was excluded by exclusion P, which excluded from coverage "property damage to the Named Insured's products arising out of such products." *Id.* at 783. The court ruled:

"Exclusion P clearly precludes any recovery for damages to materials originating from the Named Insured.... In this case, the Burkel affidavit states that the removal of the urethane material (which is a Sears product) would damage the existing roofing felt, tar and gravel (which are not Sears products).

"The costs which arise from the repair operations would not be excluded by the language of Exclusion P."

*Id.* at 784.

[¶ 17] Relying on *Emcasco Ins. Co. v. L & M. Devel., Inc.*, 372 N.W.2d 908 (N.D.1985), Fishers argue:

"Exclusions k and l set forth the work-products exclusion addressed in the *Emcasco* exclusion (*o*) which was found to be ambiguous when construed together with the exception to the contract liability exclusion. 372 N.W.2d at 910–11. Similarly, an ambiguity is created in construing exclusions k and l along with exclusion 2(b). As in *Emcasco*, the ambiguity must be construed against American Family in favor of coverage. *Id.* at 911."

Reliance on *Emcasco* is misplaced. In *Emcasco*, this court dealt with the following exclusions from coverage in a comprehensive general liability policy:

"Exclusions

"This insurance does not apply:

" '(a) to liability assumed by the insured under any contract or agreement except an incidental contract; *but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;* [Emphasis added.]

   \*     \*     \*     \*     \*     \*

" '(*o*) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; ...' "

372 N.W.2d at 910.

[¶ 18] This court construed those exceptions to provide coverage for damages arising out of a breach of warranty:

"Whether we construe the exception to exclusion (a) as granting coverage for breach of warranty or as excepting breach of warranty from the application of the exclusion for contractual liability, thereby leaving breach of warranty within the cov-

erage grant, ... coverage of damages arising out of a breach of warranty is clearly and specifically provided and it is not overcome by the general language in exclusion (*o*), which does not mention warranties." *Emcasco,* 372 N.W.2d at 911. Unlike the exception for breach of warranty contained in exclusion (a) addressed in *Emcasco,* exclusion 2(b), relied on by Fishers, does not clearly and specifically provide coverage for breach of warranty. *Emcasco* is, therefore, inapposite. We conclude reading exclusions b, k, and l together does not create an ambiguity requiring a determination that the policy provides coverage for the cost of the finish and the sanding and finishing performed by Kensok's.

### VIII

■ [¶ 19] American Family contends the *Miller–Shugart* agreement here is unenforceable because of exclusion j(5) or exclusion l. We have already concluded damages to the flooring installed in Fishers' home is not excluded by exclusions j(5) or j(6). Thus, the *Miller–Shugart* agreement is not unenforceable because of those exclusions. We have concluded exclusions k and l exclude from coverage the cost of the finish and the sanding and finishing performed by Kensok. The *Miller–Shugart* agreement here is for $7,626 "to remove, re-install and finish new replacement maple hardwood flooring." As American Family has observed, the agreement "does not differentiate between costs to remove and reinstall, as opposed to costs for refinishing."

■ [¶ 20] Relying on *Ebenezer Society v. Dryvit Systems, Inc.,* 453 N.W.2d 545 (Minn.App.1990), American Family contends "the *Miller–Shugart* agreement is invalid and unreasonable" because "Appellants failed to delineate between covered and non-covered damages."[4] Under *Miller v. Shugart,* 316 N.W.2d 729 (Minn.1982), a "stipulated judgment is not conclusive on the insurer. The plaintiff judgment creditor must show the settlement was reasonable and prudent."

*Medd v. Fonder,* 543 N.W.2d 483, 485 (N.D. 1996). The reasonableness of a *Miller–Shugart* settlement is a question of fact. *D.E.M. v. Allickson,* 555 N.W.2d 596, 603 (N.D.1996).

" 'The test as to whether the settlement is reasonable and prudent is what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim. This involves a consideration of the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial.' "

*Sellie v. North Dakota Ins. Guar. Ass'n,* 494 N.W.2d 151, 159 (N.D.1992), *quoting Miller v. Shugart,* 316 N.W.2d at 735.

■ [¶ 21] An insured who has been abandoned by its insurer and enters into a *Miller–Shugart* settlement agreement should not have the agreement wholly invalidated for failing to delineate, to the abandoning insurer's later satisfaction, between covered and non-covered damages. A *pro tanto* reduction would be more reasonable, and would better comport with the purposes underlying *Miller–Shugart* agreements. We conclude the failure to delineate between covered and non-covered damages does not render the *Miller–Shugart* settlement agreement unenforceable.

### IX

■ [¶ 22] Before entering into the *Miller–Shugart* settlement agreement, Kensok's incurred attorney fees and costs in defending the claims against it. The parties to the *Miller–Shugart* agreement stipulated Kensok's had incurred attorney fees and costs in excess of $2,500 in defending the matter. In the *Miller–Shugart* settlement agreement, Kensok's assigned to Fishers all its rights against American Family "for ... attorneys fees and other defense costs which it may have by virtue of the failure of said insurer(s) to provide a defense herein." Relying on *Johnson v. Center Mut. Ins. Co.,* 529 N.W.2d 568 (N.D.1995), Fishers contend they "are entitled to an award of attorneys' fees for the

---

4. While the *Miller–Shugart* settlement agreement stipulates to entry of judgment for $7,626 without delineating between covered and non-covered damages, Fishers' complaint against Delaney Construction itemizes damages totaling $7,626, of which $1,000 was allocated to "sanding and finishing the hardwood floor after installation."

commencement of the present proceedings to determine coverage in an amount over and above the amount of the *Miller–Shugart* agreement."

[¶ 23] Absent statutory authority, the American Rule generally assumes each party to a lawsuit bears its own attorney fees. *Ehrman v. Feist*, 1997 ND 180, ¶ 18, 568 N.W.2d 747. This court has, however, allowed an insured to recover attorney fees in litigation to resolve insurance coverage disputes. *See Johnson v. Center Mut. Ins. Co.*, 529 N.W.2d 568 (N.D.1995); *State Farm Fire & Cas. Co. v. Sigman*, 508 N.W.2d 323 (N.D.1993). The insurance policy involved here provides for supplementary payments under Coverage A for bodily injury and property damage: "We will pay, with respect to any claim or 'suit' we defend: ... 4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or 'suit'." In accordance with *Johnson* and *Sigman*, we construe the policy language broadly to provide coverage for the insured's attorney fees expended in litigation to determine coverage. We are not persuaded, however, the policy language should be construed to extend beyond the insured's attorney fees to cover Fishers' attorney fees, as assignees of Kensok's, incurred in enforcing the *Miller–Shugart* settlement agreement. Thus, we conclude Fishers are not entitled to recover attorney fees beyond those incurred by Kensok's and assigned to Fishers in the *Miller–Shugart* agreement.

## X

[¶ 24] The summary judgment is reversed and the matter is remanded for further proceedings.

[¶ 25] VANDE WALLE, C.J. and SANDSTROM, JJ., concur.

5. This "Business Key Policy" was certified for American Family Mutual Assurance Company by a Supervisor who had "custody of policy records of said Company." She certified:
THAT POLICY 33–X08164–01 WAS in full force and effect for the above KENSOKS HARDWOOD & SEAMLESS FLOORS on 03–25–94.

MESCHKE, Justice, concurring and dissenting.

[¶ 26] I join in reversing and remanding, and I join in most of the majority opinion. I respectfully disagree, however, with the conclusion in part VII. Because the majority's analysis in part VII is incomplete, I also respectfully disagree with the conclusion in paragraph 19 that this policy does not cover liability for the cost of the finish, the sanding, and finishing work by Kensoks, and the direction in paragraph 21 to carve a corresponding reduction out of the settlement agreement for those items. In my opinion, the specific products-completed operations hazards coverage in this policy insured liability "for the cost of the finish and the sanding and finishing performed by Kensok's" otherwise excluded from the general liability coverage.

[¶ 27] The *"Declarations"* page of American Family's *"Commercial General Liability Coverage Part"* listed *"Limits of Insurance"* that included: [5]

GENERAL AGGREGATE LIMIT (OTHER THAN PRODUCTS–COMPLETED OPERATIONS) ..............$2,000,000

PRODUCTS–COMPLETED OPERATIONS AGGRE-GATE LIMIT ................$2,000,000

This "Declarations" page had other details, including:

Advance Premium

| | ALL OTHERS | PR/ CO |
|---|---|---|
| | $674.00 | (INCL) |

and:

TOTAL ADVANCE PREMIUM  $674.00

The body of the policy said:

SECTION 1  COVERAGES

THAT the policy, was and is subject to the Declarations, Insuring Agreements, Terms, Conditions, Limitations and Exclusions contained in the policy and all applicable Endorsements.

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

a. *We will pay those sums that the insured becomes legally obligated to pay as damages because of* "bodily injury" or "property damage" *to which this insurance applies.* . . .

. . .

2. Exclusions.

This insurance does not apply to:

. . .

b. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

(2) That the insured would have in the absence of the contract or agreement.

. . .

j. "Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. . . .

*Paragraph (6) of this exclusion does not apply to* "property damage" *included in the* "products-completed operations hazard."

k. "Property damage" to "your product" arising out of it or any part of it.

l. *"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."*

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

. . .

These generalized exclusions from general liability coverage thus remove and except, thus insuring, "property damage" to "your work," which is insured by being specifically "included in the 'products-completed operations hazard' " coverage.

[¶ 28] A separate "SECTION III—LIMITS OF INSURANCE" explained:

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits."

2. The General Aggregate Limit is the most we will pay for the sum of:

. . .

b. Damages under Coverage A, *except damages because of* "bodily injury" or *"property damage" included in the "products-completed operations hazard;"* and

. . .

3. *The Products–Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of* "bodily injury" and *"property damage" included in the "products-completed operations hazard."*

. . .

(Emphasis added).

[¶ 29] "SECTION V—DEFINITIONS" included a subsection 11 defining the "products-completed operations hazard" that the Declarations specifically agreed to insure with only a few specific and narrowly defined

exceptions from this expanded coverage.[6] This Section V also included a subsection 12 defining "Property damage," a subsection 14 defining "Your product," and a subsection 15 defining "Your work," all terms used to define the more specific inclusions and exclusions for the products-completed operations coverage listed on the Declarations page.

[¶ 30] In their appellants' brief, Fishers expressly argued "The 'Products–Completed Operations Hazard' Provisions Expressly Provide for Coverage," pointing to definitions 11, 14, and 15. Fishers argued (footnote omitted):

> Completed operations hazard and products hazard are two separate and distinct additional coverages which may be purchased with CGL policies. Completed operations hazard is generally intended to cover damages arising from the insured's work after the work is completed. Products hazard is intended to cover damages caused by the insured's defective products. *See,* 11 Couch, Insurance §§ 44:272, 44:273 (2d ed.1982).
>
> Pursuant to the policy definitions 14 (product) and 15 (work), Kensok's "product" included the finish it sold or handled which allegedly adhered the flooring planks to one another and caused the panelization damages, and Kensok's "work" included the preparation of the flooring and application of the finish at the Fishers' home. The products-completed operations hazard provided coverage for *all* property damage arising out of the finishing products sold or handled by Kensok's, along with warran-

ties provided for those products. It also provided coverage for *all* property damage arising out of completed work performed by Kensok's, along with warranties provided for the work. The exception to exclusion j(6) makes it clear that coverage is available for property damage arising from Kensok's work or products.

Inexplicably, in its appellee's brief, American Family only argued (without citation to any authority):

> This is a misreading of the policy. This policy did not contain a "Products–Completed Operation" endorsement for coverage. Rather, it contains a definition for "Products–Completed Operations Hazard."

In their reply brief, Fishers pursued their expanded-coverage argument:

> However, the Declarations page of the policy clearly and unambiguously sets forth coverage for "Products–Completed Operations" in the aggregate limit of $2,000,000. (APPENDIX PAGE 38). The Declarations attached to policy are a part of the policy and are to be read accordingly in determining the coverages available. *See, Aeroline Flight Service v. Insurance Co. Of No. Amer.,* [257 Iowa 409] 133 N.W.2d 80 (Iowa 1965). Moreover, the presence or absence of the endorsement is not determinative as the coverage may be created without actual delivery of the policy. *Ulledalen v. United States Fire Ins.,* [74 N.D. 589] 23 N.W.2d 856, 868 (N.D.1946). There should be no question that such

---

**6.** a. *"Products-completed operations hazard"* includes all *"bodily injury"* and *"property damage" occurring away from premises you own or rent and arising out of "your product"* or *"your work"* except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. *"Your work"* will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials;

(3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

(Emphasis added).

coverage was intended and was present here.

American Family's apathetic argument to give a meaning to something not expressed in the policy deserves scant attention. Fishers' argument deserves a decision.

[¶ 31] I agree with Fishers' argument. In my opinion, this policy expressly extended "products-completed operations" coverage to Kensok's products and work.

[¶ 32] Kensok's was specifically insured for liability for " 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work'...." *See* policy definition 11.a at footnote 2, ante. The "Property damage" defined at subsection 12 includes this loss.[7] The definitions at subsections 14, "Your product," [8] and 15, "Your work," [9] clearly encompass Kensok's own work and materials for the Fishers as part of the "property damage" liability insured by the "products-completed operations hazard" coverage. The specific exceptions from the additional "products-completed operations" coverage are much more confined than the exclusions from the general liability coverage, which are phrased to exclude the "products-completed operations" hazard that is separately insured in this policy. Unfortunately, the majority recognizes the policy included the "products-completed operations" coverage, but fails to give it any meaning.

[¶ 33] American Family's argument that there can be no "products-completed operations" coverage without an "endorsement for coverage" would distort and pervert the rules for interpreting a contract. An insurance contract consists of the printed form policy, its declarations, and any endorsements attached to it. 13A John Appleman and Jean Appleman, *Insurance Law and Practice* § 7537 (1976). The policy and its endorsements must be read together. *Id.* It makes no sense to construe a policy with some unexplained endorsement not attached to the policy.

[¶ 34] As we explained in *Johnson v. Center Mut. Ins. Co.,* 529 N.W.2d 568, 571 (N.D. 1995)(some citations omitted):

Special rules of construction govern policy endorsements. An endorsement is part of the insurance contract between the parties. *See* 13A Appleman, *supra,* at § 7537; 1 Couch, *supra,* at §§ 4:32, 4:36. The entire policy, including endorsements, is to be interpreted as a whole, with every attempt made to give effect to all provisions. *Continental Western Insurance Co. v. The Dam Bar,* 478 N.W.2d 373, 375 (N.D.1991); *Haugen v. Auto–Owners Insurance Co.,* 191 N.W.2d 274, 280 (N.D.1971); 13A Appleman, *supra,* at § 7537; 1 Couch, *supra,* at § 4:36. However, we have consistently held that when there is a conflict between an endorsement and other policy provi-

7. "Property damage" means:
   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

8. "Your product" means:
   a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
      (1) You;
      (2) Others trading under your name; or
      (3) A person or organization whose business or assets you have acquired; and
   b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
   "Your product" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and
   b. The providing of or failure to provide warnings or instructions.
   "Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

9. "Your work" means:
   a. Work or operations performed by you or on your behalf; and
   b. Materials, parts or equipment furnished in connection with such work or operations.
   "Your work" includes:
   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and
   b. The providing of or failure to provide warnings or instructions.

sions, the endorsement prevails. *See Thedin, supra,* 518 N.W.2d at 706; *Hart Construction Co. v. American Family Mutual Insurance Co.,* 514 N.W.2d 384, 391 (N.D. 1994)....

American Family's argument that the policy and its declarations page do not mean what they say, because of some unexplained missing endorsement, verges on nonsense. We construe an insurance policy as a whole, not with a missing piece.

[¶ 35] In my opinion, we should reverse entirely and remand for entry of a judgment for Fishers for their entire settlement with Kensok's for all of the property damage, and without directing a proportionate reduction of the settlement for the incidental cost of the finish, the sanding, and the finishing work performed by Kensok's that was specifically insured by the additional coverage for "products-completed operations."

[¶ 36] Also, to fairly implement our decision in *Johnson v. Center Mut. Ins. Co.,* 529 N.W.2d at 572, since American Family cavalierly abandoned its insured with spurious policy interpretations, we should broadly construe this policy's Supplementary Payments agreement to pay "4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or 'suit.'" We have held that language is reasonably interpreted to require an insurance company to pay the insured's expenses in defending a law suit with the insurance company to determine policy coverage, specifically when the insured prevails. *State Farm Fire and Cas. Co. v. Sigman,* 508 N.W.2d 323, 325 (N.D.1993). Here, the insured, Kensok's, assigned its rights to Fishers, who litigated on Kensok's behalf to establish coverage. Therefore, I also dissent from that part of paragraph 23 of the majority opinion that declines "to cover Fishers' attorney fees, as assignees of Kensok's, incurred in enforcing [this] *Miller–Shugart* settlement agreement."

[¶ 37] MARING, J., concurs.