1998 ND 222

**DUNDEE MUTUAL INSURANCE COMPANY, Plaintiff and Appellant,**

v.

**Earl MARIFJEREN and Richard Lien, d/b/a Marifjeren Farms and Marifjeren Farms, Defendants and Appellees.**

Civil No. 980143

Supreme Court of North Dakota.

Dec. 22, 1998.

Jon J. Jensen (argued) and Richard A. Clapp, of Pearson, Christensen, Larivee, Clapp, Fiedler, Fischer & Jensen, Grand Forks, ND, for plaintiff and appellant.

Nicholas B. Hall, of Hodny Currie Lawyers, Grafton, ND, for defendants and appellees.

MARING, Justice.

[¶ 1] Dundee Mutual Insurance Company (Dundee) appeals from a district court judgment granting summary judgment in favor of defendants Earl Marifjeren, Richard Lien, and Marifjeren Farms (Marifjeren), in a declaratory action. The district court declared a farm insurance policy issued by Dundee was unambiguous and construed the policy to provide coverage. We affirm.

I

[¶ 2] Earl Marifjeren and Richard Lien operate Marifjeren Farms, a farming partnership in Walsh County, North Dakota. For several years, Marifjeren insured its potato crop with Dundee, a county mutual insurance company headquartered in Park River, North Dakota. During the 1996–97 growing season, Marifjeren raised approximately 500 acres of potatoes. After harvest, the potatoes were stored in a potato storage facility at the Marifjeren farmstead in Dundee Township for future delivery. For the 1996–97 growing season, Dundee issued Marifjeren a farm fire and extended coverage insurance policy, policy FF–18639, and an attached endorsement, which were both in effect for the relevant events.

[¶ 3] On April 6, 1997, Blizzard Hannah paralyzed the Red River Valley with snow, sleet, and strong winds, resulting in downed power lines and an interruption of power service to a majority of the region. The

power lines serving the rural farms and homes of Dundee Township were also downed during the storm, and a period of three days passed before service was restored. It is undisputed the storm's strong north winds were a major factor in the damage to the power lines serving Dundee Township, and those serving Marifjeren's potato storage facility. It is also undisputed the storm did not cause any physical damage to the storage facility. The power outage, however, caused all of Marifjeren's stored potatoes to freeze because the storage facility was heated by electric heaters and fans.

[¶ 4] Shortly after the storm, Marifjeren filed a claim for its potato loss. On May 13, 1997, an adjuster from Dundee determined Policy FF–18639 did not provide coverage because the policy's endorsement required "physical damage to the structure or at least physical damage to the transmission line somewhere on the insured's premises."

[¶ 5] Policy FF–18639 included the following provisions. The declaration sheet declared the policy covered "potatoes-year round: in storage" for a maximum sum of $300,000. The policy's perils section provided in part:

## I. FIRE AND EXTENDED COVERAGE

This policy insures against direct physical loss to covered property caused by the following perils:

.     .     .     .     .

**2. Windstorm or Hail.** This peril does not include loss to the interior of a building or the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

An endorsement to the policy provided in part:

### POTATOES IN STORAGE

This policy on potatoes in storage does hereby include coverage for *damage caused by freezing as a direct or indirect result of* fire damage, *wind damage,* roof collapse from weight of snow or ice and vandalism *to the potato storage facility* wherein said potatoes are stored. (Emphasis added.)

[¶ 6] On June 30, 1997, Dundee sought declaratory relief, asserting the policy and endorsement precluded coverage in the absence of physical damage to the storage facility. On cross motions for summary judgment, the district court concluded neither the policy nor the endorsement was ambiguous and construed it to provide coverage.

## II

[¶ 7] On appeal, Dundee argues the insurance policy and its endorsement unambiguously exclude coverage for natural disasters that do not cause physical damage to the potato storage facility itself. Because the region-wide power outage did not cause physical damage to the storage facility, Dundee argues the district court erred in granting Marifjeren's motion for summary judgment.

[¶ 8] Summary judgment under N.D.R.Civ.P. 56 is appropriate if the only issues to be resolved are questions of law. *Security Nat. Bank, Edgeley v. Wald,* 536 N.W.2d 924, 926 (N.D.1995). "The interpretation of an insurance policy, including whether it is ambiguous, is a question of law, which is fully reviewable on appeal." *Fisher v. American Family Mut. Ins.,* 1998 ND 109, ¶ 5, 579 N.W.2d 599. Since this case turns on the interpretation of the farm insurance policy issued to Marifjeren by Dundee, we will "independently examine and construe the insurance policy to determine if the trial court erred in its construction." *Id.; Sellie v. North Dakota Ins. Guar. Ass'n,* 494 N.W.2d 151, 156 (N.D.1992).

[¶ 9] Generally, we attempt to ascertain the parties' intent through the language of the insurance contract itself. *Northwest G.F. Mut. Ins. v. Norgard,* 518 N.W.2d 179, 181 (N.D.1994). We look first to the language of the insurance policy, and if the policy is clear on its face, our inquiry is at an end. *Martin v. Allianz Life Ins. Co.,* 1998 ND 8, ¶ 9, 573 N.W.2d 823. If coverage turns on an undefined term, however, we apply the plain, ordinary meaning of the

term in interpreting the policy. *Id.* (citing *Aid Ins. Servs., Inc. v. Geiger,* 294 N.W.2d 411, 414–15 (N.D.1980)).

[¶ 10] An ambiguity in an insurance policy exists when good arguments can be made for two contrary positions about the meaning of a policy term. *Fisher,* 1998 ND 109, ¶ 5, 579 N.W.2d 599. Any ambiguity or reasonable doubt as to the meaning of a policy term is strictly construed in favor of the insured, *id.* at ¶ 6, 579 N.W.2d 599, and we construe an ambiguous policy term " 'to mean what a reasonable person in the position of the insured would think it meant.' " *Id.* (quoting *Sellie,* 494 N.W.2d at 157). Thus, if an insurance policy term supports an interpretation imposing liability on the insurer and one that does not, we will adopt the interpretation imposing liability. *Id.*

[¶ 11] Dundee initially argues the policy's perils section precludes coverage because the blizzard did not cause "direct physical loss" to the storage facility. We need not address the perils section, however, because we find coverage under the endorsement. We have always regarded an endorsement to be part of the insurance contract itself, *Johnson v. Center Mut. Ins. Co.,* 529 N.W.2d 568, 571 (N.D.1995); *Thiel Indus., Inc. v. Western Fire Ins. Co.,* 289 N.W.2d 786, 788 (N.D.1980), and when there is a conflict between an endorsement and other policy provisions, we have consistently held the endorsement prevails. *Nodak Mut. Ins. Co. v. Heim,* 1997 ND 36, ¶ 17, 559 N.W.2d 846; *Johnson,* 529 N.W.2d at 571; *Haugen v. Auto-Owners Ins. Co. of Lansing, Michigan,* 191 N.W.2d 274, 280 (N.D.1971).

[¶ 12] Thus, we focus our attention on the endorsement. Here, again, Dundee reads a physical damage requirement into the endorsement, and argues the endorsement precludes coverage because the potatoes did not freeze as a result of physical damage to the potato storage facility. The endorsement, Dundee argues, is consistent with the perils provision and should therefore be interpreted to limit coverage to instances of physical damage to the storage facility. We disagree.

[¶ 13] The endorsement provides coverage for "damage caused by freezing as a direct or indirect result of . . . wind damage . . . to the potato storage facility." Thus, the question we face is whether "wind damage to the potato storage facility" equates with "physical damage" to the storage facility.

[¶ 14] The insurance policy does not define the term "wind damage." When an insurance policy fails to define a term, we often turn to the dictionary to determine the plain, ordinary meaning of that term. *Hanneman v. Continental Western Ins. Co.,* 1998 ND 46, ¶ 31, 575 N.W.2d 445; *Martin,* 1998 ND 8, ¶ 12, 573 N.W.2d 823. To determine the meaning of "wind damage" it is helpful to first look at the definition of "damage." One dictionary defines "damage" as "injury or harm that reduces value or usefulness." *Random House Dictionary of the English Language,* 504 (2nd ed.1987). Another defines it as "injury or harm to a person or thing, resulting in a loss in soundness, value, etc." *Webster's New World Dictionary,* 356 (2nd ed.1980). A legal dictionary defines "damage" in part as "every loss or diminution" of a person's property. *Black's Law Dictionary* 389 (6th ed.1990). Clearly, without qualification, the term "damage" encompasses more than physical or tangible damage.

[¶ 15] In the absence of a policy term or definition limiting "wind damage" to physical damage to the storage facility, we refuse to read such a requirement into the term. The function of the Marifjeren storage facility is to protect the potato crop from the elements of a North Dakota winter until the potatoes can be hauled out in the spring. When the electrical power was interrupted for three days during the storm, the storage facilities were "damaged" in the sense they no longer performed the function for which they were designed. In other words, the interruption of electrical power "damaged" the storage facilities by impairing their value or usefulness. It is undisputed the winds of Blizzard Hannah were a major factor in damaging the power lines serving the Marifjeren storage facility. We, therefore, conclude the term "wind damage," as used in this endorsement, encompassed the power outage which rendered the storage facility non-functioning as intended. We hold policy FF–18639 provides

coverage because Marifjeren's potatoes froze as a direct or indirect result of the wind damage to their storage facility.

### III

[¶ 16] The district court's judgment granting summary judgment in favor of defendants Earl Marifjeren, Richard Lien, and Marifjeren Farms is affirmed.

[¶ 17] VANDE WALLE, C.J., and NEUMANN and SANDSTROM, JJ., concur.

[¶ 18] The Honorable CAROL RONNING KAPSNER was not a member of the Court when this case was heard and did not participate in this decision.